## In re Complaint of ALBERT B. CRAFTS vs. MAXIMILIAN L. LIZOTTE.

### NOVEMBER 18, 1912.

PRESENT: Johnson, Parkhurst, Sweetland, and Vincent, JJ.

(1)    *Attorneys at Law. Disbarment Proceedings.*

Whether or not an attorney shall be disciplined rests in the discretion of the court, upon examination of the facts connected with the special complaint against him, and such other facts as may appear during its investigation, and the court is not limited to the precise charges of the complaint, but may act upon any other information which it may properly and regularly acquire. The court is not bound in its action by any particular rule of law, nor is it essential that the basis of discipline should be acts creating civil or criminal liability, but a proper basis for action may be found in conduct evidencing an unfitness for that confidence and trust which necessarily attends the relation of attorney and client or in such lack of honesty and moral character as would render the party under examination unworthy of confidence. Aside from the conduct of an attorney in connection with professional affairs, any conduct demonstrating a moral condition inconsistent with the proper appreciation and discharge of professional duties and obligations may also form a just basis for discipline.

(2)    *Attorneys at Law. Disbarment Proceedings.*

Upon a complaint against a member of the bar evidence considered and held to warrant disbarment.

COMPLAINT against an attorney at law. Order for disbarment entered.

VINCENT, J.   On August 2, 1911, and on September 1, 1911, Albert B. Crafts filed in this court certain complaints against Maximilian L. Lizotte, both being members of the bar of Rhode Island. The complaints so filed alleged a variety of misdoings on the part of Mr. Lizotte which, as the complainant claims, demand the disciplinary action of this court.

These complaints were referred, in the usual course, to the "Committee on Complaints against Members of the Rhode Island Bar" for examination and report. Before this committee, the parties interested appeared with their

witnesses, offered testimony and presented arguments. The committee considered the several matters embraced in the complaints, and made its report to this court. They found that only the second and fifth complaints were worthy of further examination. They are as follows:

(2) "That on or about the 6th day of June, A. D., 1911, the said Lizotte with malicious and evil intent procured and induced one A. F. Zainey and one Joseph M. Soucher to falsely represent and complain to the said complainant and William H. McSoley, as attorneys, that the said Lizotte had, while suspended from practice at the bar of this State, as an attorney and counsellor, accepted in said Providence a. retainer of Fifty (50) Dollars in a certain case and that at said time the said Lizotte had represented to said Zainey that he had been reinstated and was eligible to accept retainers and practice before the bar of this State, and for said purpose on said 6th day of June, A. D., 1911, the said Lizotte signed a false receipt for Fifty (50) Dollars, dated January 24, 1911, to be presented by said Zainey and Soucher to this complainant and said McSoley, and on said 6th day of June, A. D., 1911, the said Zainey and said Soucher by the procurement, consent, and connivance of the said Lizotte, presented said receipt to the said complainant and said McSoley, with malicious and evil intent.

"And the complainant in fact alleges that the said Lizotte had never accepted any retainer in any such case, as alleged, and that said case and all the allegations concerning the same made to the complainant and said McSoley as aforesaid, and said receipt were wholly fictitious and untrue."

(5) "That the said Lizotte, on, to wit, the 17th day of May, A. D., 1909, having in his hands a check, dated May 14, 1909, for $4,515, signed by Starkweather & Shepley, and payable to M. L. Lizotte and A. B. Crafts, as attorneys of one Shultz, which check had been received by said Lizotte in settlement of a certain case in which said Lizotte and this complainant had been jointly interested as attorneys for the plaintiff, with the fraudulent intent to deprive the com-

plainant of his proper share of the profits and compensation in said case, as attorney for the plaintiff without any authority from, or knowledge of the complainant, and with the intent to cash said check without the knowledge or consent of this complainant endorsed his name and the name of the complainant upon the back of said check, and thereafter, after said check had been endorsed and cashed by the consent of the complainant, the said Lizotte refused to pay the complainant his full share of the compensation, to which the complainant was entitled by agreement with the said Lizotte, for services in said case, and retained and deprived the complainant of the sum of $925.00, to which he was entitled as aforesaid."

Following the receipt of the committee's report, Mr. Crafts and Mr. Lizotte were cited to appear with their witnesses before this court, where they have now been fully heard *de novo* as to the matters specified in the two complaints above quoted.

The court has considered the evidence presented and the arguments of counsel thereon with much care and deliberation.

(1) There are certain well defined principles which should govern the court in the consideration and disposition of matters of this sort. Members of the bar are officers of the court and as such are amenable to the court for their proper conduct. Whether or not an attorney shall be disbarred or otherwise disciplined is a matter resting in the discretion of the court after learning and examining the facts and circumstances connected with the special complaint against him, and such other facts and circumstances as may appear during its investigation. The court is not limited to the precise charges of the complaint, but may act upon any other information which it may properly and regularly acquire. The court is not bound in its action by any particular rule of law, nor is it essential that the basis of discipline should be acts creating civil or criminal liability. A proper basis for disciplinary action may be found in conduct evidencing an

unfitness for that confidence and trust which necessarily attends the relation of attorney and client or in such lack of honesty and moral character as would render the party under examination unworthy of confidence. While investigations of this character usually have reference to the conduct of the attorney in his connection with professional affairs, yet, any conduct which demonstrates a moral condition inconsistent with the proper appreciation and discharge of professional duties and obligations may also form a just basis for disbarment or the imposition of some lesser punishment. In fact, any conduct which would preclude admission to the bar, might well justify a disbarment thereafter, whether such conduct be associated with the discharge of strictly professional duties and obligations or clearly separated therefrom.

Bearing in mind this brief and general statement governing investigations of this character we will now proceed to take up these complaints in their order, first with reference to Mr. Lizotte and second with reference to Mr. Crafts.

Mr. Lizotte and Mr. Crafts for some years had occupied the same suite of offices and although not at any time acting together as general copartners, they had had frequent business relations, assisting each other in their respective legal matters, including the trial of cases in court. After a time their relations became much strained, eventually leading to an open rupture and separation with marked ill feeling upon both sides. It is apparent that the filing of these complaints by Mr. Crafts was one of the fruits of this ill feeling and that except for this rupture in their relations perhaps the alleged misdoings of Mr. Lizotte might never have been called to the attention of the court.

Passing over much testimony which does not appear to be relevant to the more important questions presented for our consideration, we come down to June, 1911, and to the consideration of the occurrences during that month and subsequently.

As we have before stated Mr. Crafts and Mr. Lizotte after being associated in the same offices and somewhat in

business for a period of several years, had quarreled and separated. As to the underlying causes which led to this quarrel and separation or as to the merits of their contentions we need not be concerned. A simple reference to the existing and resultant situation is quite sufficient. Mr. Lizotte was under suspension for unprofessional conduct, and his suspension had been extended for his failure to respect the order and decree of the court. He was convinced, as he testifies, from what Mr. Crafts had said to him and from what he had learned that Mr. Crafts had said to others about him, that his troubles in the matter of suspensions had originated in the enmity of Mr. Crafts.

At this juncture in the relations of Mr. Crafts and Mr. Lizotte, it becomes important to scan the activities of one A. F. Zainey, who some five years previously had been, for a time, in Mr. Lizotte's office as a student at law. After the withdrawal of Mr. Zainey from his office Mr. Lizotte had met him in a casual way, perhaps on an average of once a month, but they had had no further business relations or interests in common.

About the beginning of June, 1911, as Mr. Lizotte testifies, Mr. Zainey came to his office and told him that he had been to Mr. Crafts' office where he had talked with Mr. Crafts and that from the latter's conversation he had become satisfied that he was hostile to Mr. Lizotte, also repeating to Mr. Lizotte what Mr. Crafts had said. Two or three days later Mr. Zainey came to Mr. Lizotte's office again, after a second visit to, and conversation with, Mr. Crafts, and again told what Mr. Crafts had said. Mr. Lizotte testifies that prior to each of these two visits of Mr. Zainey to Mr. Crafts he was not aware of any intention on the part of Mr. Zainey to make such a visit and that neither of them were brought about or encouraged through any intimation or suggestion on his part, but had their inception in the friendly feeling of Mr. Zainey toward himself. Just when, how, where or under what circumstances Mr. Zainey first became informed as to the existing hostile conditions between Mr. Crafts

and Mr. Lizotte, or how he ascertained that his interference in the matter would be agreeable to Mr. Lizotte, does not appear.

During this second visit of Mr. Zainey, Mr. Lizotte signified to him his approval of what he had done and the desirability of further operations in the same direction, designed to develop more definitely the hostile attitude of Mr. Crafts and to ascertain just how far Mr. Crafts would go in his attempts to injure him. Mr. Zainey then outlined a method of further procedure, requesting Mr. Lizotte, in order to make the scheme more effective, to make up and give to him a paper purporting to be a receipt for $50 on account of legal services.

In this emergency a man, variously called Joseph M. Soucher, Mr. Zuker, Mr. Sumara and Mr. Samra, is brought in to Mr. Lizotte by Mr. Zainey and, upon being introduced, poses as a claimant for damages for personal injuries against the Social Mills. Mr. Lizotte makes and delivers to these two men the following receipt: "Jan. 24, 1911. Received of Thomas Samra fifty dollars for services in bringing . . . against Social Mills for injuries to said Samra. M. L. Lizotte."

It is admitted that the claim of Mr. Samra and the receipt are purely fictitious and that the latter was concocted by Mr. Zainey and Mr. Lizotte to be shown to Mr. Crafts in further-ance of their scheme to obtain a more complete knowledge of the latter's attitude. It is also admitted that this receipt was given in June, although it bears date as of the 24th of January preceding.

Having obtained this document Mr. Zainey took it to the office of and exhibited it to Mr. Crafts and solicited the latter's services in behalf of Mr. Samra to recover the $50 which he pretended had been paid to Mr. Lizotte as the receipt evidenced. Upon the refusal of Mr. Crafts to enter-tain the matter without first seeing and talking with Mr. Samra and having the receipt placed in his hands, Mr. Zainey departed to return again in the course of half an hour,

accompanied by Mr. Samra. Through Mr. Zainey, as interpreter, Mr. Samra then said to Mr. Crafts that in January, 1911, he had engaged Mr. Lizotte as attorney to prosecute a claim against the Social Mills; that he knew at the time that Mr. Lizotte had been disbarred, but that Mr. Lizotte had told him that he had been fixed up all right; that he had paid Mr. Lizotte $50; that he had seen Mr. Lizotte frequently and asked him to do something about the case without avail and that Mr. Lizotte had finally refused, upon demand, to return the money or bring a suit.

These statements of Mr. Samra were then embodied in an affidavit prepared by Mr. Crafts, or at his instance. The affidavit was interpreted to Mr. Samra by Mr. Zainey. A second affidavit was also prepared to be executed by Mr. Zainey to the effect that the first affidavit had been correctly interpreted by him to Mr. Samra.

Upon the completion of these affidavits and after the parties who were to execute them had been made acquainted with their contents, Mr. Crafts deeming it desirable that their execution should take place before some magistrate entirely disinterested, Mr. Zainey and Mr. Samra were taken by Mr. William H. McSoley to the office of Patrick P. Curran, Esq., for that purpose on the 8th of June, 1911. Mr. McSoley, who is a member of the bar and was then associated with Mr. Crafts, had been present at the several interviews between Mr. Zainey, Mr. Samra and Mr. Crafts, and had also assisted in the preparation of one or more of the affidavits. Upon their arrival at Mr. Curran's office, Mr. McSoley informed Mr. Curran as to the purpose of their visit. Mr. Zainey and Mr. Samra then refused to sign the affidavits, saying to Mr. McSoley, "We got you now. We are friends of Mr. Lizotte. You and Crafts are trying to injure Lizotte," and supplementing these remarks with the presentation to Mr. Curran of the following paper, which Mr. Lizotte admits that he had previously seen and approved.

"Mr. Curran:

"I have called on you at the suggestion of Messrs. Crafts and McSoley, on a supposed complaint against Mr. Lizotte.

"I wish to say that I am friendly with Mr. Lizotte. I have heard that Crafts and McSoley were behind complaints against Mr. Lizotte, and I wanted to ascertain for my own satisfaction if either Mr. Crafts or McSoley had any ill feeling against Mr. Lizotte and whether or not they would injure him if they could.

"I therefore went to see Crafts and McSoley with a fictitious claim against Mr. Lizotte.

"I will say that Mr. Lizotte is not responsible for this job, although he understands that I am trying to find these facts.

"I have nothing against Mr. Lizotte except the best of feelings and sympathize with his last and present hard luck, but condemn most heartily his prosecutors Crafts and McSoley.

"Now that I am satisfied that either or both Crafts or McSoley would prosecute Mr. Lizotte if they had the chance —my purpose for coming here has been accomplished.

"Good-day,

"Fictitious."

Mr. Curran, after reading the paper, concluded the interview by ordering the two men from his office.

There is only one other thing relating to this branch of the matter to which it seems necessary to refer.

After the interviews, before mentioned, between Mr. Zainey, Mr. Samra and Mr. Crafts, which interviews we are told were simply designed to test the degree of hostility felt by Mr. Crafts, Mr. Lizotte testifies that from the reports of these two men he had learned that Mr. Crafts had made use of language indicating a well defined intention of injuring him, besides being most derogatory to his professional and private character, and that he almost immediately made use of such defamatory statements by embodying them in a

declaration which he subsequently filed in a suit for slander against Mr. Crafts. Mr. Crafts denies the utterances attributed to him, but whether the truth is with Mr. Crafts or with Mr. Zainey and Mr. Samra is not essential to our present inquiry.

(2)   These transactions of Mr. Lizotte, in which he was aided by the two men, Zainey and Samra, seem to us to present abundant evidence of his inability to understand and appreciate his professional obligations and to clearly demonstrate his unfitness for that trust and confidence which must necessarily attend the relation of attorney and client. It is incredible that Zainey and Samra, without any solicitation or intimation on the part of Mr. Lizotte and without his knowledge, should have initiated the scheme above set forth, but, be that as it may, Mr. Lizotte adopted it later, approved of its development and continuance, and accepted its results. The scheme involved the deception and humiliation of another member of the bar. It was evidently an effort to decoy Mr. Crafts into bringing charges against him of unprofessional conduct, which he thought he could easily refute, and clearly showed his willingness to practice a deception upon the bar committee.

Incidental to the prosecution of the scheme he was willing to and did advise and encourage in falsehood, misrepresentation and deceit the two men who were weak and irresponsible enough to aid him and to assist them himself with a receipt which was a written falsehood of his own.

Whether the real object of the visit of these two men to Mr. Crafts was to ascertain something regarding his attitude toward Mr. Lizotte is not, perhaps, of vital importance in the determination of this matter, but it is most singular that such should have been their only object. According to Mr. Lizotte's own testimony, Mr. Crafts had previously told him, among other things, "When I get through with you, you will be disbarred," and he also testified that he had already become satisfied that Mr. Crafts would do anything to injure him that he could. It is not important to settle

this question because it makes so little difference whether the primary object was to ascertain the position of Mr. Crafts or provoke him to utterances which might be made use of in an action for slander.

This is the third time that Mr. Lizotte has been before this court in disbarment proceedings. On July 9th, 1910, he was suspended from the practice of his profession until July 10th, 1911, for unprofessional conduct. On May 31st, 1911, his term of suspension was extended to October 10th, 1911, for holding himself out as an attorney during the period of his original suspension in disregard of the express order and decree of this court.

The utterance of this false receipt, as will appear from the comparison of dates, took place during the suspension of Mr. Lizotte, and whether or not accompanied by the statement on his part that his suspension had expired amounted to holding himself out as an attorney and to a violation of the order and decree of this court for a second time.

We now come to the consideration of the remaining complaint, numbered five. It appears that one Walter Shultz brought a suit against the Gorham Manufacturing Company to recover damages for personal injuries received through the bursting of an emery wheel. He employed Mr. Lizotte as his attorney in that matter, and Mr. Lizotte in turn secured the assistance of Mr. Crafts, who drew the declaration, interviewed the witnesses, etc. The case was settled, before the day upon which it was assigned for trial, by the payment of $4,515. Payment was made by the check of Starkweather & Shepley, Inc., to the order of "M. L. Lizotte and A. B. Crafts, Attorneys," which check was delivered to Mr. Lizotte, who endorsed the same in strict accordance with the face thereof, that is, by writing upon the back, "M. L. Lizotte and A. B. Crafts, Attorneys." Having done this, Mr. Lizotte presented the check to Mr. Crafts for his individual endorsement, and subsequently placed his own name under that of Mr. Crafts. Mr. Lizotte than gave the check to Mr. Shultz, the plaintiff in the case, who cashed

it at the bank and returned to Mr. Lizotte with the proceeds. Some settlement between Mr. Lizotte and the plaintiff Schultz was then effected and the matter, for the time being, was closed.

There is no testimony tending to show that Mr. Lizotte, after endorsing upon said check "M. L. Lizotte and A. B. Crafts, Attorneys," made any attempt whatever to cash the same or that any attempt was made to obtain the proceeds of such check until after the individual endorsements of both had been added thereto. Although there was some wrangle between the two men as to the right of Mr. Lizotte to write the name of Mr. Crafts in the manner described, it is undisputed that Mr. Crafts added his individual name and returned the check to Mr. Lizotte.

We think that the testimony utterly fails to support that portion of the complaint which charges that the preliminary endorsement made by Mr. Lizotte was made with the fraudulent intention of depriving Mr. Crafts of his proper share of the profits and compensation arising from this suit. We think it might reasonably occur to any person receiving a check in this particular form that either of the parties named therein might make the endorsement conforming to the face of the check and afterwards obtain the individual endorsement of the other.

Mr. Crafts, in support of his claim of fraudulent intent, undertakes to show that he has not received his proper share of the profits arising out of this litigation and that an amount materially larger than he has received is due him under and by virtue of the terms of a verbal agreement between himself and Mr. Lizotte covering all business in which they might be associated. We cannot enter upon the consideration of the business relations between the two men with a view to any settlement of their accounts. If either of them is entitled to any redress against the other, such redress must be obtained by way of an action at law.

It appeared from the testimony produced at the hearing that Mr. Lizotte had assumed the management and prosecu-

tion of the Schultz case and at a later period had agreed with his client upon a compensation for legal services amounting to fifty per cent. of the sum recovered. It does not appear that such arrangement was objectionable to Schultz. He seems to have agreed to it, and his later testimony confirms such an agreement.

During the course of the hearing before the court testimony was offered to the effect that while Mr. Lizotte had received in settlement of the Schultz case the sum of $4,515, he had represented to his client that the amount received was $3,500, and that he had effected a settlement with him upon that basis. Originally, Mr. Shultz testified before the bar committee that Mr. Lizotte had reported to him that $3,500 was the amount collected. Two other witnesses were produced who testified positively that Mr. Shultz had said in their presence that the gross amount obtained was $3,500. Before the court, Shultz changed his testimony, saying, in substance, that he knew all the time that the amount collected was $4,515, and that he was satisfied with the one-half of that sum, which he received from Mr. Lizotte. In view of the original testimony of Mr. Shultz before the bar committee, and the testimony of disinterested witnesses regarding his statements, his subsequent testimony given at the hearing does not appeal to us as being truthful. There is no satisfactory explanation for this change of attitude. There is evidence of some conversation between Shultz and Mr. Lizotte upon the subject of his testimony before the bar committee and the willingness of the former to make it satisfactory to Mr. Lizotte under certain conditions. The testimony is somewhat conflicting as to the result of such conversation. It cannot be believed that Schultz would make so absolute a change in his testimony unless some influence had been exerted upon him. The only person who would be interested in eliminating or neutralizing Shultz's former testimony would be Mr. Lizotte. It seems to us, after considering and weighing the testimony, that some such influence must have been exerted upon Schultz

either by Mr. Lizotte or by someone in his behalf and with his knowledge.

Taking the testimony in reference to the Schultz case as a whole, we feel justified in finding that Mr. Lizotte, in the outset, misrepresented to his client the amount received in settlement, and that he was later responsible for his client's change of attitude upon that question.

The reasonableness of the amount exacted by Mr. Lizotte for legal services, in the Schultz case, is a question not included in the complaint, was not raised at the hearing and has not been considered.

It was claimed at the hearing that if the testimony revealed any unprofessional conduct on the part of Mr. Lizotte, arising out of his connection with the Schultz case, that Mr. Crafts must be found to be equally guilty. We do not think that the testimony warrants such a conclusion.

It is undisputed that Schultz was a client of Mr. Lizotte and that the latter made all the arrangements with him regarding compensation and finally effected the settlement with him. If Mr. Crafts, after Mr. Lizotte had settled with his client, apparently to the latter's satisfaction, claimed an equal share with Mr. Lizotte in the proceeds of the suit, asserting that the same was due to him under a verbal agreement covering all matters in which they were associated, we do not see that Mr. Crafts' conduct in that regard would be sufficient to subject him to discipline.

We think, upon a careful consideration of the several matters set forth in these complaints or brought to our attention during the hearing, that the conduct of Mr. Lizotte has been such as to clearly demonstrate his unfitness for that trust and confidence which is the first and perhaps the most important element in the transaction of a legal business. It is, therefore, our conclusion that Mr. Lizotte should be disbarred, and an order to that effect will be entered accordingly.

*Adoniram J. Cushing,* for complainant.

*Fitzgerald & Higgins, John J. Cosgrove, Elphege J. Daignault,* for respondent.