October 16, 1972.

M. P. No. 1911. JANET G. SWANSON *et al.*, PAUL W. JONES, JOSEPH A. MADDALENA, JR., BARBARA H. BRUSS *et al.*, LORRAINE CARVALHO, MARGARET M. DOODY, BERNICE BENWAY, SELMA MUMFORD, JERRY LEWIS v. ISRAEL MOSES, *Esquire*.

## ORDER

Pursuant to Rule 9 of the rules of this court (since September 1, 1972 revised and reissued as Rule 42) the Investigating Committee prosecuted Israel Moses, a member of the bar of this state, before the Committee on Complaints on nine formal complaints each of which charged him with unprofessional conduct in matters arising out of the attorney-client relationship. At the hearings before the Committee on Complaints the respondent was present in person, represented by counsel, afforded an opportunity to question the witnesses who appeared against him and permitted to offer evidence in his own behalf.

At the conclusion of the hearings the Committee on Complaints reported in writing to this court, with copies to respondent, that the charges on which he was prosecuted had been established either in whole or in part with respect to eight complaints, and as each of those, it recommended that he be appropriately disciplined; and that the charges had not been established with respect to one complaint.[1] We then ordered respondent to appear before this court in chambers to show

[1]The Investigating Committee has voted to prosecute respondent on 19 other formal complaints, and hearings are pending before the Committee on Complaints.

cause, if any he had, why disciplinary action should not be taken against him.

The respondent appeared at the show cause hearing accompanied by counsel who, during the course of that proceeding respondent not objecting, was permitted to withdraw. Apart from vague and general denials as to some of the charges preferred against him, respondent offered no defense for his alleged misconduct. By way of explanation, however, and in attempted mitigation or extenuation, he advised us that the complaints originated during a period when he was beset by domestic difficulties at his home, secretarial problems at his office, and financial troubles with the Internal Revenue Service. In addition he felt that given "time," he could mollify and persuade those complainants who had not yet withdrawn their complaints to do so. Despite the passage of more than two months since the show cause hearing, those withdrawals have not been obtained.

There is no need to detail the evidence and findings with respect to each of the complaints. That information may be obtained from the transcripts of the proceedings and the reports of the Committee on Complaints on file in the office of the clerk of this court. For purposes of this order it will suffice to summarize what appears in connection with three of the complaints, for they disclose patterns of conduct common to all.

### The Complaint of Janet G. Swanson et al.

In May of 1971 these complainants engaged respondent to defend a $5,000 civil action. An agreement to settle the action for $300 was reached, and on September 3, 1971, the complainants gave $400 to respondent. Three Hundred Dollars was to be paid to the claimants' counsel to effectuate the settlement, and the remaining $100 was to be retained by respondent as his fee. As of February 25, 1972, the date of the complaint committee's hearing on this complaint, the $300 had not been paid.

Indeed, the sum was not paid until March of 1972. Moreover, during the more than five months which intervened between respondent's receipt of the $400 and the hearing before the committee, respondent had not communicated with complainants despite their repeated attempts to contact him. Neither had he responded to their letter of October 8, 1971, sent by certified mail, in which they observed that since September 6, 1971 they had attempted almost daily, but without success, to reach him by telephone in order to ascertain when they would receive the release which they understood would be forthcoming upon payment of the agreed settlement.

The respondent defended on two grounds. First, he offered a letter dated March 16, 1972 in which the complainants advised the committee that they were satisfied with their dealings with and had no grievances against respondent, and that they were withdrawing their complaint and requesting that no disciplinary action be taken against him. On the basis of that letter he moved to dismiss the complaint. That motion was summarily rejected. Next, he referred to his "own personal domestic matter" as an excuse for his dilatory conduct. In rejecting that excuse the committee observed that respondent's problems had not spanned the extent of his dereliction, and it premised its recommendation for appropriate disciplinary action upon findings that respondent's tardiness in fulfilling his professional obligation was "inefficient and irresponsible," and of such a nature as to raise "* * * question of whether [r]espondent had in his keeping and always available the funds entrusted to him or whether there was a callous disregard of his professional duties amounting to a breach of trust."

## The Complaint of Paul W. Jones

On May 17, 1968, Paul W. Jones sustained personal injuries in an automobile accident and soon thereafter employed respondent as his counsel. Respondent took the case on a contingent basis, the agreement being that he would be entitled to

retain as his fee one third of any recovery. About two years later the claim was settled for $449.46, and on or about June 15, 1970, respondent received the defending insurance company's check for the settlement amount. It was payable to complainant and respondent, and the check was negotiated after having been endorsed by the payees on June 22, 1970. As of the February 25, 1972 date of the hearing before the Committee on Complaints, the complainant had not received any portion of the settlement notwithstanding his repeated requests therefor.

In this instance respondent attributed his failure to account with his client to a "breakdown of communications," his "domestic problem" and his "secretarial difficulties." In addition, he moved to dismiss based upon a withdrawal letter identical in form to that offered in the Swanson complaint.

The committee concluded that respondent's failure to account to his client for more than two years for the modest sum received in settlement was "unreasonable in the extreme" and "akin to embezzlement"; that he had demonstrated "an irresponsibility and inefficiency in the handling of his practice of law beyond any logical and reasonable standard"; that his conduct amounted "to a breach of trust imposed on him by his clients"; and that his excuses were "* * * too little and the attempted withdrawal too late to affect the serious consequences of his misconduct."

### The Complaint of Selma Mumford

The respondent was retained in August of 1970 to collect $750, that being the balance allegedly due on a promissory note payment of which was secured by a conditional sales contract on a backhoe. A fee of $200 was paid.

The record discloses that following his retention respondent was contacted by his client, but only with difficulty, and that during the year immediately preceding the hearing before the

Committee on Complaints he failed to respond to any of the repeated attempts made on complainant's behalf to contact him. On the few occasions when contact was made, he assured his client that the case was about ready to go to court, or that action would soon follow. Those assurances were given even though respondent had neither commenced suit against nor made any attempt to communicate with the debtor.

Finally, after all her attempts to obtain action from respondent were of no avail, complainant employed another attorney. That attorney requested that the papers and documents in the case be turned over to him, but respondent failed to comply with that request by the time of the May 8, 1972 hearing.

The only explanation respondent offered for his conduct was that another attorney, whom he had requested to assist him, had returned the papers in the case after a delay of about 60 days.

On the foregoing record the committee found that respondent had completely failed to perform the legal services for which he had accepted a fee; that he had misrepresented to his client that action was being taken; that he had failed to explain to his client why he had not acted; and that he had retained the fee paid by his client notwithstanding his complete neglect to do that which he had been employed to do.

We are satisfied from our reading of the record that it is replete with evidence in support of the committee's conclusions that respondent either has not used monies entrusted to him by his clients for the purposes for which entrusted, or that he did so only after long, unconscionable and unnecessary delays; that he received funds on behalf of his clients for which he either failed to account at all, or accounted for only after his clients' charges against him had reached the hearing stage before the Committee on Complaints; that he accepted fees for professional services to be performed and that without satis-

factory explanations failed either in whole or in part to perform those services, and that notwithstanding those failures he did not reimburse those clients in whole or in part for the fees so paid; and that without reasonable cause he neglected to advise his clients concerning the status of matters referred by them to him in circumstances which suggest that he may have been deliberately evading those clients.

The respondent's conduct continued for more than two years. His domestic, secretarial and Internal Revenue problems are not acceptable excuses for his continued and persistent transgressions. In our judgment, he has demonstrated a moral condition which is inconsistent with a proper appreciation and discharge of the duties and obligations which inhere in the attorney-client relationship. *Mulvey* v. *O'Neill*, 71 R. I. 309, 44 A.2d 880 (1945); *Heitmanek* v. *Turano*, 158 A. 878 (R. I. 1932); *Hale* v. *McGauley*, 147 A. 889 (R. I. 1929); *Grinsell* v. *Wilcox*, 98 A. 977 (R. I. 1916); *In re Holton*, 36 R. I. 114, 89 A. 242 (1914), and his unprofessional conduct has made it impossible for clients to repose in him that trust and confidence which in *Crafts* v. *Lizotte*, 34 R. I. 543, 84 A. 1081 (1912) *rehearing denied*, 85 A. 384 (1912), we said was "* * * the first and perhaps the most important element in the transaction of a legal business." *Id.* at 555, 84 A. at 1086.

That respondent may have procured a withdrawal of some of the complaints made against him, while perhaps in some circumstances a consideration in mitigation, certainly does not condone his misconduct in these matters, particularly when the adjustments of the differences which apparently led to the withdrawal of those complaints did not occur until subsequent to his appearances before the Committee on Complaints.

Upon consideration we find that respondent has not shown any good cause why the findings and recommendations of the Committee on Complaints should not be approved; and they hereby are approved. Accordingly, the respondent, Israel Moses,

is indefinitely suspended as of November 17, 1972 from practice as an attorney and counselor-at-law.

The effective date of respondent's suspension has been deferred in order to afford him a reasonable opportunity to make satisfactory arrangements to protect the interests of his clients. In making those arrangements he shall:

1) Promptly notify by registered or certified mail, return receipt requested, all clients represented in pending matters, other than litigated or administrative matters or proceedings pending in any court or agency, of his suspension and consequent inability to act as an attorney after the effective date of this order, and he shall advise those clients to seek legal advice elsewhere;

2) Promptly notify by registered or certified mail, return receipt requested, each of his clients who is involved in litigated matters or administrative proceedings, and the attorney or attorneys for each adverse party in such matter or proceeding, of his suspension and consequent inability to act as an attorney after the effective date of this order, and he shall advise the client to obtain the prompt substitution of another attorney or attorneys in his place;

a) In the event the client does not obtain substitute counsel before the effective date of this order, it shall be respondent's responsibility to move expeditiously *pro se* in the court in which the action is pending, or before the body in which an administrative proceeding is pending, for leave to withdraw from that action or proceeding, and he shall give proper notice thereof;

b) Any notice to be given to the attorney or attorneys for an adverse party shall state the place of residence of respondent's client;

3) Keep and maintain records of the various steps taken by him in compliance with this order so that, upon any

subsequent proceeding instituted by or against him, proof of compliance herewith will be available; and

4) File with the clerk of this court within ten days after the effective date of this order an affidavit reporting that he has fully complied with its directives. That affidavit shall set forth the residence or other address where communications may be directed to respondent and he shall promptly notify the clerk of this court of any change in such address.

In addition respondent

(1) Shall not, following entry of this order, accept any new retainer, or engage as attorney for another in any new case or legal matter of any nature. He may, however, during the period between the entry date of this order and its effective day wind up and complete, on behalf of any client, all matters which were pending on the entry date; and

(2) Shall not share in any fee for legal services performed by another attorney during the period of his suspension. He may be compensated, however, (a) for disbursements incurred by him prior to the effective date of this order, and (b) on a *quantum meruit* basis for legal services rendered prior to the effective date of this order. The amount and manner of payment of such compensation and recoverable disbursements shall be fixed by the Committee on Complaints on the application of either the respondent or the new attorney, on notice to the other as well as on notice to the client. In no event shall the combined legal fees exceed the amount the client would have been required to pay had no substitution of attorneys been required.

Any application by the respondent for reinstatement shall be accompanied by a proper showing respecting adjustments of fees

accepted by him for professional services which he failed to render either in whole or in part.

It is so ORDERED.

BY ORDER:

WALTER J. KANE,
*Clerk*

ENTER:

THOMAS H. ROBERTS
*Chief Justice*

October 16, 1972