No. 2014-148-M.P.
(Dissent begins on page 37)

In the Matter of Keven A. McKenna.            :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**PER CURIAM.**  This attorney disciplinary matter comes before this Court pursuant to a recommendation of the Disciplinary Board of the Rhode Island Supreme Court (board) that the respondent, Keven A. McKenna, be suspended from the practice of law for a period of one year. Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure for Attorneys provides in pertinent part:

> "If the [b]oard determines that a proceeding * * * should be concluded by a public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court.  This Court shall review the record and enter an appropriate order."

We directed the respondent to appear before this Court at its conference on June 11, 2014, to show cause why he should not be disciplined.  Having heard the representations of the respondent and this Court's Disciplinary Counsel, and having reviewed the entire record, we conclude that cause has not been shown and that the imposition of discipline is appropriate.  We adopt the recommendation of the board that the respondent be suspended from the practice of law for a period of one year, with said period of suspension to become effective thirty days from the date of this opinion.

# I

## Procedural History

On November 5, 2012, Chief Disciplinary Counsel brought disciplinary charges against respondent, alleging violations of several of the Supreme Court Rules of Professional Conduct. The petition asserted four counts: count 1 alleged that respondent violated Article V, Rules 3.3, 7.1, 7.5, and 8.4(c) of the Supreme Court Rules of Professional Conduct by engaging in the unauthorized practice of law as a limited liability entity in violation of this Court's order of February 23, 2011; count 2 alleged that respondent violated Rules 3.3 and 8.4(c) by failing to disclose his income to the United States Bankruptcy Court for the District of Rhode Island (Bankruptcy Court), misrepresenting his interest in a receivable to that court, and by engaging in conduct that amounted to a lack of candor, dishonesty, and misrepresentation to the bankruptcy trustee; count 3 alleged that respondent violated Article V, Rule 1.19 of the Supreme Court Rules of Professional Conduct by failing to provide records requested by Assistant Disciplinary Counsel[1] through a subpoena and by failing to keep records as mandated by Rule 1.19; and count 4 alleged that respondent violated Rule 3.3 and Article V, Rule 3.5(d) of the Supreme Court Rules of Professional Conduct by engaging in conduct during proceedings in the Workers' Compensation Court and Bankruptcy Court that demonstrated a lack of candor, as well as an attempt to disrupt those tribunals.

On December 11, 2012, respondent filed an answer to the petition, stating that the "answers to the Petition for Disciplinary Action are hereby set forth in the attached Federal Court Complaint." The federal complaint, brought against Chief Disciplinary Counsel, Assistant Disciplinary Counsel, and the Chair of the board, alleged multiple constitutional violations and

---

[1] The Supreme Court appointed an Assistant Disciplinary Counsel to investigate this matter.

sought to "temporarily, preliminarily, and permanently restrain" the board from enforcing the provisions of the Rules of Professional Conduct. In the federal complaint, respondent argued that this Court has no authority to regulate "non court room [sic] and non-attorney client activities of R.I. [a]ttorneys * * * ." The United States District Court for the District of Rhode Island (District Court) dismissed the complaint, holding that abstention was required under Younger v. Harris, 401 U.S. 37 (1971), because the relief respondent sought would require federal interference in an ongoing state judicial proceeding. McKenna v. Gershkoff, 2013 WL 3364368 at *1-*2 (D.R.I. July 3, 2013) (not officially reported).

The respondent also filed numerous motions with the board, seeking to avoid the board's review of this matter by alleging multiple constitutional violations. A three-member panel of the board (the panel) convened and conducted eight hearings on this matter between February 18, 2013 and October 16, 2013. The panel heard testimony from respondent, attorney Kevin Heitke (who, for a time, represented respondent's professional corporation in Bankruptcy Court), Sheila Bentley McKenna (respondent's wife), attorney Thomas Quinn (Chapter 11 trustee in respondent's professional corporation's bankruptcy case), and Daniel Marks (a client of respondent). Numerous exhibits were admitted, including the transcript of the hearings in Workers' Compensation Court that provided the genesis of the proceedings now before this Court.

## II

### Facts

The following facts are gleaned from the voluminous record of the board's proceedings. In May 2009, respondent was practicing law under the duly licensed entity "Keven A. McKenna, P.C." (the PC). Also in May 2009, an employee of the PC, Sumner Stone, filed a claim for

workers' compensation benefits, alleging a work-related injury. Because the PC was unable to provide proof that it carried workers' compensation insurance as required by statute, a pretrial order was entered that ordered it to make weekly compensation payments to Stone. The respondent, on behalf of the PC, refused to make the payments, arguing that this order violated his due process rights. Over the course of several months and a dozen hearings, respondent made multiple motions to dismiss and repeatedly asked the Chief Judge of the Workers' Compensation Court, who was presiding over the hearings, to recuse himself. Each motion was argued, and all of the motions were denied. Despite the denials, respondent continued to press the same arguments at virtually every hearing.

The respondent repeatedly argued that he was being denied his right to a full hearing on the merits; however, the entire course of the proceedings in the Workers' Compensation Court consisted of the disposition of his own motions and of the employee's motions relating to respondent's failure to comply with the pretrial order. After presiding over the numerous hearings, the Chief Judge observed that respondent was "simply using the procedures of this court to delay and harass." Eventually, the Chief Judge dismissed respondent's claim for trial, due to the fact that respondent refused to make payments as required by the pretrial order. Thus, the pretrial order became the court's final order.

While the Workers' Compensation Court transcripts are replete with examples of respondent's apparent contempt for the court and the proceedings as a whole, we highlight a few particularly illustrative excerpts:

- 4 -

"[Respondent]: I would like to enter an order on that, that you're denying me a right to a speedy civil trial * * * .

"* * *

"[Respondent]: I will drag this on forever.

"* * *

"[Respondent]: I have filed, and I will file again a motion to recuse you because I'm suing you personally for due process rights, violations, and that is a requirement for you to recuse yourself, assign it to another judge. * * * This is a rump court proceeding. You're aiding and abetting a criminal getting benefits * * * .

"* * *

"[Respondent]: [Stone is] making a mockery of this court, Your Honor, because of your dislike for me. You will not give me a trial. I'm going to ask for a trial on this one, you're not going to give it to me. You're just going to continue this thing on with the hope that you will be generating money.

"* * *

"The Court: Mr. McKenna, are you alleging, first of all, you're not denying that you have not made payments; is that correct?

"[Respondent]: I'm not going to answer that question. You're not the prosecutor, Your Honor.

"* * *

"[Respondent]: That's why we don't want judges doing administrative function. [sic] We don't like judges pandering to attorneys and nonprofit corporations like you do with [opposing counsel] * * * ."

During the ninth day of hearings, respondent, while testifying as a witness, refused to admit familiarity with the pretrial order that had been the subject of the previous eight hearings.

Opposing counsel then attempted to confirm the address of respondent's house:

"[Opposing Counsel]: Mr. McKenna, where do you live?
"[Respondent]: In a house.
"[Opposing Counsel]: Can you tell me the address of your house?
"[Respondent]: No.

"* * *

"[Respondent]: I don't have a house.
"[Opposing Counsel]: Where, well, you just said you did. You just said - -
"[Respondent]: I did not. I live in a house.
"[Opposing Counsel]: You live in a house. What is the address of that house that you live in?
"[Respondent]: Actually, I don't think it has an address, it has a post-office box.

"[Opposing Counsel]: Does your house, is your house on a street anywhere?
"[Respondent]: No.
"[Opposing Counsel]: It's not? Is it on an avenue?
"[Respondent]: No.
"[Opposing Counsel]: Is it on a court?
"[Respondent]: No.
"[Opposing Counsel]: Well, if I was to come and visit you, how would I get there?
"[Respondent]: You would have to get directions from me."[2]

In December 2009, the Workers' Compensation Court entered an order finding respondent in contempt for his refusal to make payments to Stone as required by the pretrial order. The respondent appealed from this order. After temporarily staying the order, this Court declined to hear the appeal and remanded the matter to the Workers' Compensation Court, noting that respondent had not claimed an inability to comply with the order. The respondent next sought a stay of the order from the United States District Court and the Superior Court and, after failing to receive the stay, he filed a motion with the Workers' Compensation Court claiming an inability to meet the payment obligations "due to circumstances beyond his control, including but limited [sic] to a priority U.S. I. R.S. [sic] [levy] of [$]171,000 upon his bank account."

On January 25, 2010, the day before the hearing on his motion in the Workers' Compensation Court, respondent filed a Chapter 11 bankruptcy petition on behalf of the PC and then presented that filing to the court during the hearing on his motion, arguing that it automatically stayed any action by the Workers' Compensation Court. The Chief Judge noted that respondent was also named personally in Stone's claim, and he set a hearing for that same

---

[2] It is worth mentioning that in respondent's answer to the U.S. Trustee's complaint objecting to discharge in Bankruptcy Court, see infra, respondent provided a street address for his residence.

afternoon on the issue of whether the bankruptcy stay applied to respondent personally. During

the break, respondent filed a petition for personal bankruptcy.

Subsequent to the appointment of a Chapter 11 trustee for the PC, respondent applied to

this Court for a license to practice law as a limited liability company under the name "The Law

Offices of Keven A. McKenna, LLC" (the LLC). On February 23, 2011, because respondent had

"made no provision for the transfer of any client files to any other entity, nor ha[d] the PC

withdrawn its appearance in any pending cases," this Court entered an order directing respondent

to satisfy the Court that the PC would no longer engage in the practice of law. We stated that,

until that time, respondent "may continue to practice law in his individual capacity only and not

in any corporate form." On March 24, 2011, respondent withdrew his application for a license to

practice law as an LLC.

Notwithstanding this Court's order, respondent continued to use a bank account in the

name of "Law Offices of Keven A. McKenna, LLC."[3] He deposited checks made payable to the

LLC, as well as other checks, and he wrote checks for expenses directly related to the practice of

law, including the Supreme Court attorney registration fee, Rhode Island Bar Association dues,

and court filing fees. These actions form the basis for count 1, alleging respondent's violation of

Rules 3.3, 7.1, 7.5, and 8.4(c)[4] by engaging in the unauthorized practice of law as a limited

liability entity in violation of this Court's order.

---

[3] On or around March 24, 2011, respondent changed the name of the bank account to "McKenna Support Services, LLC"; however, he continued to use checks bearing the name "Law Offices of Keven A. McKenna, LLC" after this date.

[4] Article V, Rule 3.3 of the Supreme Court Rules of Professional Conduct states, in pertinent part: "Candor toward the tribunal. (a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer * * * ."
Rule 7.1 states, in pertinent part: "Communications concerning a lawyer's services. A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services."

During the bankruptcy proceedings for the PC, an issue arose regarding legal services that respondent had provided to the Estate of Amelia Carmone for a number of years prior to filing the bankruptcy petition. Despite having accrued a sizable amount of unpaid fees for legal services provided to this client (hereinafter known as the "Wells receivable"[5]), respondent failed to report the existence of this receivable on his initial corporate bankruptcy filing. The respondent filed the required Schedule B disclosure of assets on January 25, 2010, and amended it on May 3, 2010; on neither occasion did he list the Wells receivable. In March 2011, respondent disclosed to the bankruptcy trustee that the Wells receivable amounted to $63,000 and was uncollectable. During this period of time, respondent had been attempting to purchase the PC's receivables from the trustee for $10,000.

On June 7, 2011, respondent appeared in the Probate Court for the Town of Bristol and asserted a lien for attorney's fees in the amount of $93,000 against real property owned by the Carmone estate, as well as a petition for approval to sell property located at 10 Hope Street in the Town of Bristol, to satisfy the lien.[6] Although respondent represented to the bankruptcy trustee that the receivable was largely uncollectable, he did not disclose that there was real property in the estate that could potentially secure the debt. In addition, respondent did not have authority from the trustee to attempt to collect the debt himself. These actions form the basis for count 2, alleging that respondent violated Rules 3.3 and 8.4(c) by failing to disclose his income to the Bankruptcy Court, misrepresenting his interest in a receivable to that court, and by engaging in

---

Rule 7.5 states, in pertinent part: "Firm names and letterheads. * * * (d) Lawyers may state or imply that they practice in a partnership or other organization only when that is a fact."
Rule 8.4 states, in pertinent part: "Misconduct. It is professional misconduct for a lawyer to: * * * (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation * * * ."
[5] John Wells was the successor executor of the estate.
[6] This petition was later withdrawn.

conduct that amounted to a lack of candor, dishonesty, and misrepresentation to the bankruptcy trustee.

On August 4, 2011, the U.S. Trustee filed a complaint objecting to discharge. In his answer to the complaint, respondent neither admitted nor denied a large number of the allegations, including those that were straightforward and clearly within his knowledge; for example, whether he had filed his bankruptcy petition and bankruptcy schedules "under oath" (despite the fact that the petition's signature page included the language "I declare under penalty of perjury that the information provided in this petition is true and correct" and that the bankruptcy schedules contained similar language); whether he had a "Wells receivable" as property of the PC's bankruptcy estate; and whether the exhibits to the complaint, viz., copies of his motions in the Bristol Probate Court to collect attorney's fees for the work performed regarding the Wells receivable, were "true and accurate" copies of his own pleadings.

Subsequent to the U.S. Trustee's complaint, respondent filed an application for waiver of discharge; the waiver was granted, and the Trustee dismissed the complaint. The respondent's actions in Bankruptcy Court, as well as his actions during the lengthy Workers' Compensation Court hearings, form the basis for count 4, alleging that he violated Rules 3.3 and 3.5(d)[7] by engaging in conduct before both tribunals that demonstrated a lack of candor, as well as an attempt to disrupt these tribunals.

On September 12, 2011, Assistant Disciplinary Counsel issued a subpoena to respondent, directing him to produce the records identified in Rule 1.19(a)(1)-(8)[8] and to testify regarding the

---

[7] Rule 3.5(d) states, in pertinent part: "Impartiality and decorum of the tribunal. A lawyer shall not: * * * engage in conduct intended to disrupt a tribunal."
[8] Article V, Rule 1.19(a) of the Supreme Court Rules of Professional Conduct requires that:
> "A lawyer shall maintain for seven (7) years after the events which they record:

veracity and completeness of the production. The respondent appeared at the deposition but failed to produce the requested records. Instead, he challenged the authority of Assistant Disciplinary Counsel to issue the subpoena, and he stated that he needed more time. The respondent's failure to comply with the subpoena is the basis of count 3, alleging a violation of Rule 1.19.[9]

---

"(1) The records of all deposits in and withdrawals from special accounts specified in Rule 1.15 and of any other bank account which records the operations of the lawyer's practice of law. These records shall specifically identify the date, source and description of each item deposited, as well as the date, payee and purpose of each withdrawal or disbursement.

"(2) A record for special accounts, showing the source of all funds deposited in such accounts, the names of all persons for whom the funds are or were held, the amount of such funds, the description and amounts, and the names of all persons to whom such funds were disbursed.

"(3) Copies of all retainer and compensation agreements with clients.

"(4) Copies of all statements to clients or other persons showing the disbursement of funds to them or on their behalf.

"(5) Copies of all bills rendered to clients.

"(6) Copies of all records showing payments to lawyers, investigators or other persons, not in the lawyer's regular employ, for services rendered or performed.

"(7) Copies of all retainer agreements and closing statements.

"(8) All checkbooks and check stubs, bank statements, pre-numbered cancelled checks and duplicate deposit slips with respect to the special accounts specified in Rule 1.15 and any other bank account which records the operations of the lawyer's practice of law."

[9] Rule 1.19(g) provides: "A lawyer who does not maintain and keep the accounts and records as specified and required by this Disciplinary Rule, or who does not produce any such records pursuant to this Rule shall be deemed in violation of these Rules and shall be subject to disciplinary proceedings."

## III

## Disciplinary Proceedings

A series of eight hearings was conducted before a three-member panel of the board, during which both respondent and Assistant Disciplinary Counsel examined witnesses and entered exhibits into evidence. In addition to challenging the authority of the panel to hear the matter, as well as the authority of this Court to regulate attorneys, respondent argued that there was no basis for sanctions.

Specifically as to count 1, respondent argued that, after the February 2011 order of this Court, he changed the name and purpose of his LLC to "McKenna Support Services, LLC" and used the bank account established under that LLC name to pay his employees, his rent, and his expenses. The respondent argued that the use of the account and the checks bearing the name of the former LLC did not constitute the practice of law, and that he had continued to use these checks as a mere matter of convenience. Regarding count 2, respondent argued that he had made no false statements on his bankruptcy filings, and that he valued the Wells receivable at $63,000 because "[n]ot all of the estate['s] billing had been posted" and the unbilled time increased the value to $93,000. With respect to count 3, respondent argued that he had brought records to the deposition, although he made them available for inspection only, and not for copying. Further, respondent averred that he had invited Assistant Disciplinary Counsel to his law office to inspect the records there, an invitation that was declined. Finally, as to count 4, respondent argued that his actions in Workers' Compensation Court and Bankruptcy Court are outside this Court's jurisdiction. He further represented that there was no evidence that he had engaged in conduct intended to disrupt any tribunal.

The panel found that there was clear and convincing evidence that respondent had violated the Rules of Professional Conduct as alleged in counts 1, 2, 3, and 4. Regarding count 1, the panel found that "[r]espondent's use of the 'LLC' designation in his deposit slip/letterhead constitutes a 'material misrepresentation of fact or law' and is false and misleading * * * ." Further, the panel found that respondent's testimony "by which he attempted to justify and/or excuse" these actions was "palpably disingenuous." As to count 2, the panel found that respondent "engaged in a course of conduct deliberately designed to hide the existence, value and collectability of the Wells Receivable." This conduct included making false statements of material fact, failing to disclose material facts, and offering evidence that respondent knew to be false.

Regarding count 3, the panel found that respondent admitted that he did not bring all of the records requested to either his deposition or the hearing, and that his invitation to Assistant Disciplinary Counsel to inspect the records at his law office did nothing to mitigate this failure. Because the subpoena directed him to produce the records at the office of Disciplinary Counsel, he was duty bound to do so. As to count 4, the panel found that during the Workers' Compensation Court proceedings, respondent was "flippant, evasive, dilatory and disruptive." The panel noted that it was "disturbed by [respondent's] disrespect" for the judge who was presiding over that hearing, particularly respondent's repeated refusal to answer simple questions posed by the court, as well as respondent's employing the threat of a lawsuit to support his motion to recuse that judge. Finally, the panel found that respondent "was deliberately and unnecessarily disruptive and dilatory, disrespectful to the [c]ourt including the judge and opposing counsel, combative, evasive[,] unresponsive, disputatious and pugnacious in both his testimony and in his actions as counsel for himself" before that court.

The panel rejected respondent's argument that he was being subjected to disciplinary action because of his "controversial positions on constitutional issues." Rather, the panel concluded that "the allegations [were] sufficiently serious to warrant a recommendation for a disciplinary sanction." The panel recommended a one-year suspension from the practice of law. On May 13, 2014, the panel's recommendation was approved and adopted by the board.

## IV

### Discussion

Pursuant to Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure for Attorneys, it became our unenviable task to review the record submitted by the board to determine whether a forty-year member of the bar should be disciplined for his conduct. Mindful of the gravity of this proceeding, we undertook a thorough review of the record, particularly the transcripts of the proceedings in Workers' Compensation Court and the hearings before the panel. Because respondent has raised numerous objections based on constitutional arguments, we shall first address these concerns, and we will then discuss the findings of the board.

### A

### Respondent's Constitutional Claims

Throughout the course of these disciplinary proceedings, respondent has repeatedly asserted claims of constitutional violations.[10] While these claims have been inserted in a piecemeal, repetitive fashion into nearly all of respondent's filings with this Court and with the board, we have parsed them into two general areas of concern: (1) he challenges the authority of

---

[10] The respondent has filed four substantive motions with this Court: (1) a motion to stay these proceedings pursuant to G.L. 1956 § 9-33-2; (2) a motion to recuse the justices of this Court; (3) a motion to dismiss counts 2 and 4; and (4) a motion to dismiss count 3.

this Court to regulate attorneys, as well as its and the board's jurisdiction over matters of attorney discipline; and (2) he alleges that the proceedings before the board and this Court have violated his procedural due process rights.[11] We will address these contentions in turn.[12]

## 1. This Court's Authority and Jurisdiction

The respondent challenges the authority of this Court to regulate attorneys, as well as its and the board's jurisdiction over matters of attorney discipline. More specifically, respondent contends that this Court's power is limited to appellate jurisdiction over statutory courts and/or that the judiciary's inherent power is limited to adjudicating cases and controversies. He appears to argue that this Court's creation of disciplinary procedures and the disciplinary board, as well as this Court's promulgation of rules of professional conduct, are exercises of legislative power not delegated by the General Assembly and are, therefore, violative of the doctrine of separation of powers.

Contrary to respondent's protestations, "[i]t is well settled that the authority of the Supreme Court to discipline the members of the bar * * * is plenary in nature." In re Lallo, 768 A.2d 921, 924 (R.I. 2001). As this Court explained almost eighty years ago:

---

[11] We note that respondent's motions and memoranda are less than models of clarity, and we have employed our best efforts to decipher and address his various constitutional claims. The following verbatim quote is but one example of the manner in which respondent composed his memoranda submitted to this Court:

> "It was a violation of due process to have been civilly prosecuted by a persons appointed by the Supreme Court to prosecute for McKenna for violations created by illegal legislative actions of the R.I. Supreme Court. It was violation of Due Process to have those self-legislated rules enforced by the Judicial Bank and not be enforced by Executive regulatory appointment not appointed by the Governor."

[12] The respondent also appears to claim that the disciplinary process has violated his rights under the First Amendment; however, his discussion of this issue is perfunctory at best, and certainly insufficient to form a cognizable claim for us to address. See Manchester v. Pereira, 926 A.2d 1005, 1015 n.8 (R.I. 2007) (repeating well-established rule that this Court will not substantively address an issue that is not adequately briefed).

> "In Rhode Island, at least since the adoption of the State Constitution, [the power to license attorneys and admit them to practice] has been vested in this [C]ourt. The General Assembly has conceded this by section 2, chapter 322, G.L. 1923, wherein it is declared that: 'The [S]upreme [C]ourt * * * shall by general or special rules regulate the admission of attorneys to practice in all the courts of the state.'[13] This language has long been accepted by common consent to be declaratory of the power inherent in this [C]ourt to control and supervise the practice of law generally, whether in or out of court. A careful examination of the public laws, even before the adoption of the Constitution, and as far back as the year 1800, fails to reveal an enactment of the General Assembly assuming to regulate the matter by statute. On the other hand, there is ample evidence of the exercise of this power as a matter of course by the Superior Court of Judicature established in 1746-47 which was the predecessor of this [C]ourt until 1798, when it became the Supreme Judicial Court." Rhode Island Bar Association v. Automobile Service Association, 55 R.I. 122, 129-30, 179 A. 139, 142 (1935).[14]

"This broadbased power includes the power to supervise, administrate, discipline, and serve the needs of the public in all facets of the courts." In the Matter of Almeida, 611 A.2d 1375, 1381 (R.I. 1992), superseded by statute on other grounds, Ryan v. City of Providence, 11 A.3d 68, 73-74 (R.I. 2011). It further includes "the authority to exercise necessary means to regulate and control the practice of law by promulgating and enforcing rules to discipline attorneys." Id. at 1382. "Since the early days of English common law, it has been widely recognized that courts possess the inherent power to regulate the conduct of attorneys who practice before them and to discipline or disbar such of those attorneys as are guilty of unprofessional conduct." Howell v. State Bar of Texas, 843 F.2d 205, 206 (5th Cir. 1988); see In re Snyder, 472 U.S. 634, 643 (1985) ("Courts have long recognized an inherent authority to suspend or disbar lawyers. * * * This inherent power derives from the lawyer's role as an officer of the court which granted

---

[13] This statute is now codified at G.L. 1956 § 8-1-2.

[14] This Court went on to explain the historical roots of this institutional structure in common law England. See Rhode Island Bar Association v. Automobile Service Association, 55 R.I. 122, 132-33, 179 A. 139, 143-44 (1935).

admission."); see also In re Petition of Almond, 603 A.2d 1087, 1087 (R.I. 1992) ("This court is responsible for promulgating rules regulating the practice of law and ethical standards for the conduct of attorneys admitted to the Rhode Island Bar.").[15]

The passage of the separation of powers amendments in 2004 did not in any way dilute, but rather served to solidify and strengthen, this inherent judicial authority. In 2004, article 5 of the Rhode Island Constitution was amended to provide that the powers of the Rhode Island government are distributed into "three separate and distinct departments: the legislative, executive and judicial." R.I. const., art. 5. "In practice, this doctrine operates to confine legislative powers to the legislature, executive powers to the executive department, and judicial powers to the judiciary * * * ." In re Request for Advisory Opinion from House of Representatives (Coastal Resources Management Council), 961 A.2d 930, 933 (R.I. 2008). Just as "the separation of powers amendments did not, either explicitly or implicitly,[] limit or abolish the power of the General Assembly in any other area where we have previously found its jurisdiction to be plenary," see id. at 935-36, the separation of powers amendments reinforced the judiciary's previously recognized plenary powers, including the power to regulate the practice of law. See State v. Germane, 971 A.2d 555, 590 (R.I. 2009) (separation of powers doctrine prohibits "unwarranted legislative invasion of the judicial power").

Accordingly, this Court has the authority, as it has had since its inception, to promulgate and enforce rules of conduct and procedure for the regulation of attorneys, as well as to exercise necessary means to regulate and control the practice of law. This includes appointing

---

[15] See also G.L. 1956 § 8-6-2 (judicial authority to promulgate rules of practice and procedure); G.L. 1956 § 11-27-18 (recognizing right of this Court to regulate and discipline members of the bar); G.L. 1956 § 7-5.1-2(2) (identifying the Supreme Court as the regulatory agency for attorneys at law); G.L. 1956 § 7-16-3.1 (applying § 7-5.1-2(2) to professional limited liability companies).

disciplinary counsel, creating the board to carry out this Court's disciplinary powers, and subpoenaing witnesses and materials in investigations related to attorney misconduct.

Next, respondent claims that the appointment of disciplinary counsel as a "special prosecutor" and use of the subpoena power are exercises of the executive power and violate the separation of powers doctrine, and he also maintains that the General Assembly has not delegated the subpoena power to the Supreme Court.

We can find no legitimate basis for respondent's assertion that the subpoena power is an executive power or that it must be delegated to the judiciary by the General Assembly. See, e.g., State v. Guido, 698 A.2d 729, 734 (R.I. 1997) (recognizing "the subpoena power of the judiciary"); Bartlett v. Danti, 503 A.2d 515, 517 (R.I. 1986) (same); Donatelli Building Co. v. Cranston Loan Co., 87 R.I. 293, 297, 140 A.2d 705, 707 (1958) (recognizing court's inherent power to issue subpoenas); see also Taylor v. Illinois, 484 U.S. 400, 409 (1988) ("To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence * * * ") (quoting United States v. Nixon, 418 U.S. 683, 709 (1974)). The Court, the board, and lawyers licensed to practice in Rhode Island, as officers of the Court, including Disciplinary Counsel, may all properly exercise the judiciary's inherent subpoena power. See In re Snyder, 472 U.S. at 644 (recognizing that "as an officer of the court, a lawyer can cause persons to drop their private affairs and be called as witnesses in court, and for depositions and other pretrial processes," although "subject to the ultimate control of the court").

Similarly, respondent's contention that this Court's appointment of an Assistant Disciplinary Counsel as a "special prosecutor" is a violation of the separation of powers doctrine—contrary to the advisory opinion in In re House of Representatives (Special Prosecutor), 575 A.2d 176 (R.I. 1990)—is misguided. In that matter, at the request of the House

- 17 -

of Representatives, the five members of this Court issued an advisory opinion, opining that proposed legislation relating to the appointment of special prosecutors by the Chief Justice for crimes involving public officials was unconstitutional. See id. at 176-77, 180. The justices reasoned that, under the principle of separation of powers, the legislation impermissibly encroached upon the power of the judiciary and threatened its independence. See id. at 178-79. It did so by permitting the Chief Justice both to appoint and supervise special prosecutors (which included defining the scope of the special prosecutors' jurisdiction, releasing the special prosecutors' findings to the public, and removing special prosecutors) and to review on appeal any felony prosecutions tried by the special prosecutor. Id. at 179. The justices concluded that these conflicting roles by the Chief Justice "threaten[ed] the institutional integrity of the Judicial Branch." Id. (quoting Commodity Futures Trading Commission v. Schor, 478 U.S. 833, 851 (1986)).

The proposed legislation at issue in In re House of Representatives impermissibly transferred to the judiciary a fundamental executive power—specifically, the "power and discretion to prosecute crimes"—which power is vested in the Office of the Attorney General by the Rhode Island Constitution. See In re House of Representatives, 575 A.2d at 179-80; see also R.I. Const., art. 9, sec. 12. In contrast, the role and function of disciplinary counsel appointed by this Court is a means to carry out an inherent judicial function: the regulation of attorneys. Furthermore, this Court is not, in the context of attorney discipline, jeopardizing its function as the court of last resort of criminal matters. Rather, this Court is the only tribunal with authority over matters of attorney discipline. See In re Commission on Judicial Tenure and Discipline, 916 A.2d 746, 751 (R.I. 2007) (noting that this Court has "steadfastly held" that the authority of this Court to discipline the bar and bench is "plenary and exclusive"). This Court has established

disciplinary procedures that allow initial screening and review by the board, with the assistance of Disciplinary Counsel, in order to safeguard the due process rights of attorneys subject to discipline. Furthermore, in the event an attorney disciplinary proceeding uncovers the possibility that a crime may have been committed, such matters are referred to the Office of the Attorney General to investigate and act on in accordance with its prosecutorial discretion.

The respondent further argues that this Court does not have jurisdiction over attorney conduct outside of the Supreme Court's proceedings and, specifically, that attorney conduct in the Workers' Compensation Court, the Federal Bankruptcy Court, and "professional offices" falls outside of this Court's jurisdiction.

The respondent's contention that this Court's jurisdiction over attorney conduct is limited to actions in the Supreme Court is not warranted in law or fact. Not only would respondent's argument render much of the professional rules of conduct nugatory, it is contrary to the well-established "power inherent in this [C]ourt to control and supervise the practice of law generally, whether in or out of court." Rhode Island Bar Association, 55 R.I. at 129-30, 179 A. at 142 (emphasis added). Especially considering how few attorneys come before the Supreme Court and how infrequent such appearances are by the majority of attorneys who practice in this state, such a rule would utterly prevent this Court from protecting the public from incompetent, unethical, or irresponsible representation. Rather, the ethical standards imposed on attorneys historically have extended—and do still extend—beyond the courtroom. See id. at 134, 179 A. at 144 (in the English colonies, "[a]dmission to the bar meant admission to practice law, and admission to practice law comprehended all the activities of a lawyer in advising and assisting

- 19 -

others in all matters of law both in and out of court").[16]  Indeed, over a century ago, this Court recognized:

> "[A]ny conduct which demonstrates a moral condition inconsistent with the proper appreciation and discharge of professional duties and obligations may also form a just basis for disbarment or the imposition of some lesser punishment.  In fact, any conduct which would preclude admission to the bar might well justify a disbarment thereafter, whether such conduct be associated with the discharge of strictly professional duties and obligations or clearly separated therefrom."  Crafts v. Lizotte, 34 R.I. 543, 546, 84 A. 1081, 1082 (1912).[17]

In accordance with these principles, it is undeniable that this Court may investigate and discipline attorney conduct regardless of where that conduct takes place.  Attorneys licensed in Rhode Island are held to the same professional standards whether they are practicing in the Workers' Compensation Court, in another state court, or in a local federal court.  Indeed, this Court has regularly applied Rhode Island's Rules of Professional Conduct to attorneys practicing in the local federal district court.  See, e.g., In the Matter of Schiff, 677 A.2d 422, 423, 425 (R.I. 1996) (suspending attorney from the practice of law for eighteen months for her violation of the Supreme Court Rules of Professional Conduct after she submitted a materially false affidavit to the United States District Court for the District of Rhode Island); In re Petition of Almond, 603 A.2d at 1087, 1090 (denying a federal prosecutor's petition for waiver of Article V, Rule 3.8 of the Supreme Court Rules of Professional Conduct, which had been based on his contention that

---

[16] See Rhode Island Bar Association, 55 R.I. at 134-35, 179 A. at 144-45 for an historical and in-depth discussion rejecting the argument that the regulation of lawyers should be limited to conduct occurring in court.

[17] See also Rhode Island Bar Association, 55 R.I. at 135, 179 A. at 144 (quoting the Supreme Court of South Carolina, in In Re Duncan, 65 S.E. 210, 211 (S.C. 1909), as stating that "[i]t is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts"); Anderson v. Bosworth, 15 R.I. 443, 445, 8 A. 339, 341 (1887) ("it is now well settled that the jurisdiction [of the court's disciplinary power] extends to any matter in which an attorney has been employed by reason of his professional character").

the rule conflicted with federal rules and standards and was a violation of the supremacy clause of the United States Constitution). Further, attorneys are held to the same ethical standards whether they are practicing in court, in a professional office, at home, on the street, over the phone, in a coffee shop, or anywhere else. There are no geographic or location-specific limitations to an attorney's ethical obligations.

Next, respondent claims that the supremacy clause of the United States Constitution prevents this Court from exercising authority over attorney conduct in federal courts. "In analyzing a claim under the supremacy clause, it is axiomatic that the supremacy clause is relevant only when there is impermissible state interference with federal law." In re Petition of Almond, 603 A.2d at 1090 (citing Hillsborough County v. Automated Medical Laboratories, Inc., 471 U.S. 707, 712 (1985)). In the instant matter, there is no such interference because the state and federal courts have consistently been in harmony as to the proper ethical conduct of attorneys practicing in their respective courts. For instance, the United States District Court for the District of Rhode Island has adopted the Supreme Court Rules of Professional Conduct (and any additional standards of conduct set forth in its local rules). See Rule 208 of the Local Rules of the United States District Court for the District of Rhode Island. In order to practice in the federal Bankruptcy Court in Rhode Island, an attorney must be in good standing with the bar of the Supreme Court of Rhode Island and must be admitted to practice in the United States District Court for the District of Rhode Island. See Rule 9010-1(a) of the Rules of the United States Bankruptcy Court for the District of Rhode Island. Further, there is no indication that these disciplinary proceedings in any way disrupted the bankruptcy proceedings in federal court, which continued to transpire without interruption from this Court, the board, or Disciplinary

Counsel. Nor has respondent contended that any specific disciplinary charge or applicable Rule of Professional Conduct interferes with a particular federal rule or law.

Accordingly, for the reasons stated above, this Court may exercise jurisdiction over attorney disciplinary matters generally, and over respondent specifically.

## 2. Due Process

The respondent raises numerous concerns implicating his procedural due process rights under the federal and state constitutions. First, he contends he was denied his procedural due process right to "present evidence and argue law" and to be heard by the "full board." Second, he appears to be arguing that, because this Court promulgates and enforces the Rules of Professional Conduct, appoints persons to the board, hires disciplinary counsel, and ultimately determines whether and how to discipline an attorney for misconduct, this amounts to a constitutionally infirm merger of investigatory, prosecutorial, and adjudicatory functions so as to deny respondent procedural due process.[18]

Both the federal and state constitutions provide that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV; R.I. Const. art. 1, sec. 2. This Court has quoted the United States Supreme Court in explaining that "[t]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct." Germane, 971 A.2d at 574 (quoting Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1985)). "The guarantee of procedural due process assures that

---

[18] The respondent also contends that he was fined by the Workers' Compensation Court without an evidentiary hearing. This question is not properly before this Court; review of that contention would require a writ of certiorari issued to the Appellate Division of the Workers' Compensation Court. See G.L. 1956 § 28-35-30; McGloin v. Trammellcrow Services, Inc., 987 A.2d 881, 885 (R.I. 2010).

there will be fair and adequate legal proceedings, while substantive due process acts as a bar against 'certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" Id. (quoting L.A. Ray Realty v. Town Council of Cumberland, 698 A.2d 202, 210 (R.I. 1997)).

When addressing procedural due process concerns, this Court "ha[s] previously employed the three-part test articulated by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 335 * * * (1976)." Germane, 971 A.2d at 574. Under the Mathews test, three factors are to be considered in determining whether a procedure violates due process:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Germane, 971 A.2d at 574-75 (quoting Mathews, 424 U.S. at 335).

As to the first factor, it is undisputed that respondent's license to practice law in this state, which has been in place for forty continuous years, is a property interest sufficient to invoke due process protections. See Barry v. Barchi, 443 U.S. 55, 64 (1979); Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 238-39 (1957); see also Mackey v. Montrym, 443 U.S. 1, 10 n.7 (1979).

As to the third factor, it appears respondent does not dispute that the state has an interest in regulating attorneys.[19] Regarding the second factor, the state's interest in regulating attorneys must be enforced with sufficient procedural safeguards as to protect an attorney's property interest in his license to practice. "[A]n essential principle of due process is that a deprivation of

---

[19] The respondent appears to dispute, instead, which government branch has authority to do so; this issue has been addressed supra.

life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Germane, 971 A.2d at 579 (quoting Loudermill, 470 U.S. at 542); see In re Ruffalo, 390 U.S. 544, 550 (1968) (an attorney subject to discipline must be afforded fair notice of the charge and a meaningful opportunity to respond).

Although respondent contends that he was not able to "present evidence and argue law" and was denied a hearing by the full board,[20] it is indisputable that respondent was given a meaningful opportunity to be heard. A panel of the board convened and conducted eight hearings on this matter over an eight-month period, heard testimony from respondent and other witnesses, admitted numerous exhibits from both Disciplinary Counsel and respondent, and gave respondent the opportunity to present and argue numerous motions. The respondent was also permitted to submit to the board a post-hearing memorandum summarizing his position on the facts and law. Furthermore, due process does not require a hearing before the full board; hearings held before a panel of the board are appropriate to the nature of disciplinary matters. See Barber v. Exeter-West Greenwich School Committee, 418 A.2d 13, 20 (R.I. 1980) ("[d]ue process is a flexible concept and the degree of protection afforded to an individual may vary with the particular situation"). Accordingly, the principle of notice and a hearing has been complied with in this case.

The due process clause also guarantees a hearing before a tribunal that is not "biased or otherwise indisposed from rendering a fair and impartial decision." La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights, 419 A.2d 274, 283 (R.I. 1980); see Champlin's Realty Associates v. Tikoian, 989 A.2d 427, 443 (R.I. 2010). "[T]he mere existence of a combination of 'investigatory, inquisitorial, and adjudicative roles in a single administrative

---

[20] The respondent has not alleged that he did not receive proper notice of the charges or hearing.

body' does not amount to a denial of due process or signify that the agency's structure or operations is subject to constitutional attack." In re Commission on Judicial Tenure and Discipline, 916 A.2d at 750 (quoting La Petite Auberge, Inc., 419 A.2d at 284). The United States Supreme Court has explained that, "in order to challenge an administrative process successfully on the grounds of a combination of incompatible functions, a respondent must show that the procedures 'pos[e] such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" La Petite Auberge, Inc., 419 A.2d at 284 (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975)).

This Court has recognized that "the procedures employed in a modern administrative agency that allots 'the prosecutorial function to a staff of attorneys or other personnel who will not participate in the eventual decision, is a common and recommended feature of American administrative enforcement activity.'" In re Commission on Judicial Tenure and Discipline, 916 A.2d at 751 (quoting La Petite Auberge, Inc., 419 A.2d at 284). "[A]cceptable accommodation can be reached between the needs for aggressive enforcement of [the] public-interest * * * and fairness to individual * * * respondents, within the framework of a single agency's organizational processes." La Petite Auberge, Inc., 419 A.2d at 285.

The attorney disciplinary procedures in this state are designed in such a way that complaints against attorneys are addressed fairly in accordance with state and federal law. As discussed above, this Court steadfastly has held that "the authority of this Court to discipline [attorneys] is plenary and exclusive." In re Commission on Judicial Tenure and Discipline, 916 A.2d at 751. The fact that this Court promulgates and enforces attorney disciplinary rules,

appoints board members, and hires disciplinary counsel to enforce these rules is typical of administrative enforcement.[21]

There is absolutely no indication from this Court's Rules of Disciplinary Procedure or the record of the present case that the same individuals are involved in the building of an adversarial case and the deciding of the issues, or that other special circumstances make the risk of unfairness intolerably high. All investigations, whether upon complaint or otherwise, are initiated and conducted by Disciplinary Counsel who presents recommendations to the board but does not participate in the board's decision. See Rule 6(a), (b). Furthermore, the board may commence formal proceedings only after a screening panel finds probable cause to believe the respondent-attorney is guilty of misconduct (although a respondent-attorney may demand formal proceedings as of right). See id. These procedures ensure unbiased review of charges of attorney misconduct while safeguarding against any "risk of actual bias or prejudgment." La Petite Auberge, Inc., 419 A.2d at 285 (quoting Withrow, 421 U.S. at 47).

Additionally, the board's role is restricted to making recommendations to this Court. See Art. III, Rules 4(d)(2) and 6(d) of the Supreme Court Rules of Disciplinary Procedure. Upon a finding of attorney misconduct, it is the responsibility of the board to recommend a sanction, including, but not limited to, public censure, suspension, or disbarment; however, the board's decisions are not final and it lacks enforcement authority. See Rules 4 and 6(d). Because of the board's limited authority, this Court is obligated to review the record and the evidence adduced by the board, in order to enter an appropriate order. See Rule 6(d). Any proceedings before this Court are to be conducted by Disciplinary Counsel, which again ensures the separation of

---

[21] See, e.g., G.L. 1956 chapter 17.1 of title 42 and chapter 17.7 of title 42 (creating the state Department of Environmental Management, granting it the power to issue its own rules and regulations and to hire and appoint enforcement personnel, and establishing a process of adjudication of disputed enforcement actions).

adversarial and adjudicatory functions. See id. Accordingly, we are not persuaded by respondent's apparent argument that the procedures utilized result in a merger of investigatory, prosecutorial, and adjudicatory functions such that his right to due process was denied. The respondent's motions to dismiss counts 2, 3, and 4 are therefore denied.

**B**

**Respondent's Motion to Recuse**

Next, respondent has moved to recuse the members of this Court, claiming a procedural due process violation and a violation of the Code of Judicial Conduct based on allegations of personal hostility toward—and bias against—him by members of this Court. He asserts three bases for these allegations: (1) Assistant Disciplinary Counsel was appointed by this Court; (2) the chair of the panel that heard respondent's case applied to the Chief Justice to be appointed a magistrate during the course of the disciplinary proceedings; and (3) the members of this Court are "friendly" with a retired Chief Justice, who "[r]eportedly * * * has a bias toward [respondent]."

As mentioned above, the due process clause "entitles a person to an impartial and disinterested tribunal." Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980). However, "[a] respondent who raises this sort of irregularity must overcome a 'presumption of honesty and integrity in those serving as adjudicators.'" La Petite Auberge, Inc., 419 A.2d at 284 (quoting Withrow, 421 U.S. at 47). "This presumption may be overcome through evidence that 'the same person(s) involved in building one party's adversarial case is also adjudicating the determinative issues' or if 'other special circumstances render the risk of unfairness intolerably high.'" Champlin's Realty Associates, 989 A.2d at 443 (quoting Kent County Water Authority v. State (Department of Health), 723 A.2d 1132, 1137 (R.I. 1999)).

Likewise, Article VI of the Supreme Court Code of Judicial Conduct requires that judges "avoid impropriety and the appearance of impropriety in all of [their] activities" and "perform the duties of judicial office impartially and diligently." Code of Judicial Conduct Canons 2, 3. Thus, "judicial officers are duty-bound to recuse themselves if they are 'unable to render a fair or an impartial decision in a particular case.'" Ryan v. Roman Catholic Bishop of Providence, 941 A.2d 174, 185 (R.I. 2008) (quoting Kelly v. Rhode Island Public Transit Authority, 740 A.2d 1243, 1246 (R.I. 1999)). Absent actual bias, the code provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned * * * ." Code of Judicial Conduct Canon 3E1. The pertinent inquiry in this regard is whether "a reasonable person might question [the judge's] ability to remain impartial in hearing the case," particularly where facts exist "that would prompt a reasonable question in the mind of a well-informed person about the judge's capacity for impartiality * * * ." In re Bulger, 710 F.3d 42, 46 (1st Cir. 2013).

While judicial officers are obligated to recuse themselves under necessitating circumstances, they "have an equally great obligation not to disqualify themselves when there is no sound reason to do so." State v. Mlyniec, 15 A.3d 983, 999 (R.I. 2011) (quoting Ryan, 941 A.2d at 185). "The burden is on the party seeking recusal to set forth facts establishing that the justice possesses a 'personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his [or her] impartiality seriously and to sway his or her judgment.'" Id. (quoting Mattatall v. State, 947 A.2d 896, 902 (R.I. 2008)).

Here, respondent has failed to provide any facts that would demonstrate either bias or the appearance of bias. First, as explained above, this Court's appointment of Assistant Disciplinary Counsel does not constitute a structural defect in violation of the due process clause; and, for the

same reasons, it does not present an issue of bias warranting recusal. Second, respondent appears to assert that the justices of this Court harbor personal animus towards him because the retired Chief Justice serves the Court in the capacity of an appellate mediator and is "friendly" with members of the Court. Assuming, arguendo, that the former Chief Justice has a bias toward respondent, the former Chief Justice's cordial relationship with the current members of this Court is insufficient to impute bias or the appearance of bias. Similarly, respondent implies that the current Chief Justice of this Court may harbor bias against respondent because a member of the panel had applied to this Court for appointment to a magistrate position during the time when this disciplinary matter was pending.[22] This fact alone does not demonstrate bias by the Chief Justice in this proceeding, and respondent has not supported his serious allegations with any additional relevant facts. Instead, he appears content to rest his claims on mere conjecture. As we have previously stated, "[r]ecusal is not in order by a mere accusation that is totally unsupported by substantial fact." Mlyniec, 15 A.3d at 1000 (quoting State v. Clark, 423 A.2d 1151, 1158 (R.I. 1980)). We do not take motions for recusal lightly, but in this case respondent has simply failed to establish any facts showing our apparent or actual bias. Accordingly, his motion to recuse the members of this Court is denied.

## C

### Respondent's Motion to Stay Pursuant to G.L. 1956 § 9-33-2

In addition to his constitutional objections, respondent has moved this Court to stay the proceedings pursuant to G.L. 1956 § 9-33-2, commonly referred to as the "anti-SLAPP" statute, arguing that "[t]he purpose of the activities of [disciplinary counsel] who was hired by this Court

---

[22] The member of the panel in question was not appointed to the position.

is to chill the free speech rights of Keven A. McKenna as an attorney by having his [sic] suspended from the practice of law for pre-textual minor allegations * * * ."

"The General Assembly enacted the anti-SLAPP statute in order to 'prevent vexatious lawsuits against citizens who exercise their First Amendment rights of free speech and legitimate petitioning' under the United States and Rhode Island Constitutions 'by granting those activities conditional immunity from punitive civil claims.'" Palazzo v. Alves, 944 A.2d 144, 150 (R.I. 2008) (quoting Alves v. Hometown Newspapers, Inc., 857 A.2d 743, 752 (R.I. 2004)). "Section 9-33-2 provides that, when that conditional immunity attaches, it renders 'the petitioner or speaker immune from any civil claims for statements, or petitions, that were not sham by virtue of being objectively or subjectively baseless.'" Id. (quoting Global Waste Recycling, Inc. v. Mallette, 762 A.2d 1208, 1211 (R.I. 2000)).

The purpose and application of the anti-SLAPP statute are wholly inapplicable to attorney disciplinary proceedings. The respondent is not being sued for his exercise of First Amendment rights of free speech; rather, he is the subject of a disciplinary complaint, deriving from his conduct as a licensed attorney, brought by Disciplinary Counsel under the rules of this Court after a thorough investigation. We find no merit in respondent's claim that this process is somehow being used as a vehicle for chilling his free speech rights, nor in his claim that the anti-SLAPP statute has any applicability to this type of proceeding. Accordingly, we deny respondent's motion to stay these proceedings pursuant to § 9-33-2.

**D**

**The Disciplinary Board's Findings**

In addressing the board's findings on the four counts, we begin by noting that no client has brought this complaint, and there is no allegation that respondent ever improperly accessed

any client funds. That is one circumstance that sets this apart from many of the disciplinary cases that make their way to this Court. However, it is the responsibility of this Court to give force and effect to all of the Rules of Professional Conduct. In doing so, we are mindful of the high threshold of ethical conduct expected of members of the bar in this state. Aspiring lawyers are required to pass the Multi-State Professional Responsibility Examination[23] and to successfully undergo a character and fitness interview. Law students customarily take a course in professional ethics, during which they are schooled in the high ethical standards expected of an officer of the court. Newly admitted attorneys are required to take a day-long "Bridge the Gap" course, which focuses heavily on professional ethics. It is our intent that all lawyers hold a healthy respect for the Rules of Professional Conduct, and that they carry forward in their careers the oath they swore upon entering this profession:

> "[I] solemnly swear that in the exercise of the office of attorney and counselor [I] will do no falsehood, nor consent to any being done; [I] will not wittingly or willingly promote, sue or cause to be sued any false or unlawful suit; or give aid, or consent to the same; [I] will delay no man's cause for lucre or malice; [I] will in all respects demean [myself] as an attorney and counselor of this [C]ourt and of all other courts before which [I] may practice uprightly and according to law, with fidelity as well to the court as to [my] client; and that [I] will support the constitution and laws of this state, and the constitution and laws of the United States. So help [me] God." Article II, Rule 8 of the Supreme Court Rules for Admission of Attorneys and Others to Practice Law.

It is our expectation that newly admitted attorneys will observe adherence to that oath reflected in the practice of the more senior members of the bar.

---

[23] "Any applicant for the bar examination shall be required to have obtained a Multi-State Professional Responsibility Examination (MPRE) scaled score of 80 in order to be eligible to sit for the Rhode Island bar examination." Note to Article II, Rule 1 of the Supreme Court Rules for Admission of Attorneys and Others to Practice Law.

We do not question respondent's fidelity to the constitution—even if, from time to time, we disagree with his interpretation of that document. However, the role of attorney demands more. There are dozens of rules that govern professional conduct which, read together, demand a high level of ethics and professionalism from members of this bar. We cannot maintain the integrity of the profession if we ignore persistent, intentional, and repeated violations of the Rules of Professional Conduct. Neither can we hold young attorneys to the standards we have set if we allow more senior, seasoned members of the bar to flout those rules with impunity.

In his brief summarizing the hearings before the panel, respondent stated that "[t]he cliché that lawyers are 'officers' of the Supreme Courts [sic] is no more than a cliché." We beg to differ. An attorney's position as an officer of the court is a sacred trust. "Courts have long recognized an inherent authority to suspend or disbar lawyers. * * * This inherent power derives from the lawyer's role as an officer of the court which granted admission." In re Snyder, 472 U.S. at 643. An officer of the court is a person "who is charged with upholding the law and administering the judicial system. Typically * * * a judge, clerk, bailiff, sheriff, or the like, but the term also applies to a lawyer, who is obliged to obey court rules and who owes a duty of candor to the court." Black's Law Dictionary, 1259 (10th ed. 2014). "'[T]he courts not only demand [lawyers'] loyalty, confidence and respect but also require them to function in a manner which will foster public confidence in the profession and, consequently, the judicial system.'" In re Griffiths, 413 U.S. 717, 723-24 (1973). Benjamin Cardozo, then Chief Justice of the New York Court of Appeals, wrote:

> "'Membership in the bar is a privilege burdened with conditions.'
> * * * [An attorney is] received into that ancient fellowship for
> something more than private gain. He [becomes] an officer of the
> court, and, like the court itself, an instrument or agency to advance
> the ends of justice. His co-operation with the court [is] due,
> whenever justice would be imperiled if co-operation [were]

withheld.  * * * He might be censured, suspended, or disbarred for 'any conduct prejudicial to the administration of justice.'" <u>People ex rel. Karlin v. Culkin</u>, 162 N.E. 487, 489 (N.Y. 1928).

The duty of candor, then, is the foundation of a lawyer's profession.  That duty is not limited by the dictates of Rule 3.3 of the Rules of Professional Conduct; rather, courts have held that there is a general duty of candor to the court that is broader than the rule.  <u>See</u> <u>United States v. Shaffer Equipment Co.</u>, 11 F.3d 450, 457 (4th Cir. 1993) ("[W]e are confident that a general duty of candor to the court exists in connection with an attorney's role as an officer of the court.").  The basis of this general duty of candor is "the principle that lawyers, who serve as officers of the court, have the first line task of assuring the integrity of the process." <u>Id.</u>

> "Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice.  However, because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions—all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition.  Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process." <u>Id.</u>

The integrity of the justice system is not served when an attorney, who has been sworn to tell the whole truth in a proceeding, refuses to answer simple, straightforward questions, whether posed by the court or by opposing counsel.  Nor is it served by an attorney who disregards an order of this Court, fails to respond to a subpoena, or deliberately misrepresents his assets to a bankruptcy trustee.  "The system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end." <u>Shaffer Equipment Co.</u>, 11 F.3d at 457-58.

It is clear that respondent's actions in Workers' Compensation Court were not candid and not directed towards the truth, however literally true some of his responses may have been—<u>e.g.</u>,

- 33 -

"I live in a house."  We are further troubled by respondent's conduct in Bankruptcy Court.  We agree with the board's conclusion that respondent's failure to disclose the nature of the Wells receivable, as well as his refusal to admit or deny basic information in his answer to the complaint objecting to discharge, constituted a lack of candor toward the tribunal in violation of Rule 3.3.  We also agree with the board's findings that respondent's conduct regarding the Wells receivable was dishonest, in violation of Rule 8.4(c).  As the board concluded:

> "It is unfathomable that the serial misrepresentations and omissions of material fact, as unearthed and presented in this case, and which we find established by clear and convincing evidence, would occur without a mindset purposely predisposed to preventing the disclosure of assets which [respondent] deliberately attempted to hide from creditors, including the Bankruptcy Trustee."

Furthermore, a reading of the Workers' Compensation Court transcripts, containing respondent's painfully repetitive arguments and his steadfast resistance to the procedural boundaries of the proceedings, shows conduct clearly intended to disrupt the tribunal in violation of Rule 3.5(d).

We also agree with the board that respondent's actions with regard to his use of the name "Keven A. McKenna, LLC" violated Rules 7.1, 7.5, and 8.4(c) of the Rules of Professional Conduct.  After receiving an order of this Court explicitly prohibiting respondent from practicing law as an LLC, he continued to use a bank account under the name of the LLC.  He deposited checks for legal services into this account, with at least one made out to the LLC.  The respondent used this account to pay for expenses specifically associated with the practice of law, including his attorney registration fee, court filing fees, transcript fees, and title search expenses.  We note the board's determination that respondent's justifications and excuses for these actions were "palpably disingenuous."

Additionally, we concur with the board's finding that respondent's failure to provide the records requested through Assistant Disciplinary Counsel's subpoena constituted a violation of Rule 1.19. The respondent admitted at his deposition that he had not brought all of the records as requested, seemingly relying on a last-minute motion to quash the subpoena, which was not granted. As explained supra, Assistant Disciplinary Counsel clearly had the authority to subpoena respondent's records, and respondent intentionally failed to comply with this request.

## E

## Sanction

Chief Justice John Marshall once observed:

> "On one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion ought to reside in the Court. This discretion ought to be exercised with great moderation and judgment; but it must be exercised; and no other tribunal can decide, in a case of removal from the bar, with the same means of information as the Court itself." Ex parte Burr, 22 U.S. (9 Wheat.) 529, 530 (1824).

So too, it is the ultimate responsibility of this Court to fashion an appropriate sanction for respondent's violations of the Rules of Professional Conduct. In so doing, we customarily give great weight to the recommendation of the board. See In re Foster, 826 A.2d 949, 953 (R.I. 2003); In re Cozzolino, 811 A.2d 638, 641 (R.I. 2002). Nevertheless, this Court is the final arbiter of professional discipline. In re Foster, 826 A.2d at 953.

We have carefully considered the voluminous record of these proceedings, as well as the recommendation of disbarment by Assistant Disciplinary Counsel, and indeed the judgment of our dissenting colleague that the board's recommendation is inadequate. We commend the

members of the board, and the members of the hearing panel in particular, for their patience in considering respondent's sometimes repetitive arguments and continual challenges to their authority. We are ever aware of the significant role that the board plays in protecting the public and upholding the integrity of the bar and the legal profession.

This Court has often said that "the purposes of discipline are not punishment of the attorney but protecting the public and maintaining the integrity of the profession." In re Scott, 694 A.2d 732, 736 (R.I. 1997). We are satisfied that the board's recommendation of a one-year suspension from the practice of law is warranted in this case and appropriately meets the dual purposes of professional discipline. In our opinion, the record before us clearly illustrates a persistent pattern of obstreperous behavior from 2009 to the present day, and before several courts, that derogates sharply from the ethical standards to which we expect attorneys in this state to adhere. We disagree, however, with the dissent's characterization of a one-year suspension as a mere "slap on the wrist." We do not consider insignificant a one-year hiatus in one's chosen profession with the consequent effect on his or her livelihood.

In an apparent attempt to mitigate his misconduct, respondent reminds us that no client has brought a complaint against him. Unfortunately, that is not particularly relevant; the simple fact is that respondent was representing himself when the conduct that is the basis for the disciplinary action took place. The Rules of Professional Conduct are in place not solely to protect individual clients but also to protect the integrity of the judicial system itself. We would not be true to our duty of safeguarding the integrity of the profession if we were to ignore respondent's conduct.

We do not take lightly the responsibility of crafting a meaningful sanction for this conduct. We are mindful of and take into account the respondent's many years of service to his

clients and the bar, including his participation in the state constitutional convention and his significant pro bono work. The respondent is clearly an intelligent attorney and a passionate advocate. We profoundly hope that, in the future, those attributes will be employed more appropriately.

## V

## Conclusion

For the reasons stated above, we order that the respondent be suspended from the practice of law for a period of one year, said period of suspension to commence thirty days from the date of this opinion. In order to protect the interests of his current clients, we authorize Disciplinary Counsel to supervise the orderly transfer of the respondent's client matters to new counsel. At the conclusion of this one-year period of suspension, the respondent must apply to this Court for reinstatement pursuant to Article III, Rule 16 of the Supreme Court Rules of Disciplinary Procedure.

**Justice Goldberg, concurring in part and dissenting in part.** I respectfully dissent from that portion of the majority decision that adopts the recommendation of the Disciplinary Board of the Rhode Island Supreme Court (the board) that the respondent be suspended from the practice of law for a period of one year. I do not undertake this dissent lightly, but do so in accordance with my firm belief that the duty to protect the integrity of this profession rests with this Court and, in light of that responsibility, the sanction adopted by the majority is inadequate and fails to respond to the egregious nature and sheer number of material misrepresentations made by the respondent and, importantly, also ignores the respondent's conduct before the board.

Having carefully reviewed the entire record in this proceeding and in light of the recommendation of disbarment by Assistant Disciplinary Counsel who prosecuted the petition, I cannot agree with such a minimal sanction, which, in my opinion, does little to further any of the Court's well-established goals in imposing attorney discipline. In the face of this egregious misconduct, this sanction does scant justice and overlooks the sad fact that this lawyer of many years refuses or is unable to accept the authority of the Supreme Court over the conduct of attorneys. In my opinion, this sanction amounts to a slap on the wrist.

I begin by noting that, before the board, Assistant Disciplinary Counsel advocated that respondent should be disbarred. The board found, by clear and convincing evidence, that respondent violated the Rules of Professional Conduct in each and every count of the petition. The board also rejected respondent's conspiracy-theory defense and his "unsupported and inflammatory assertions * * * that he [was] being subjected to disciplinary action and/or persecuted because of his controversial positions on constitutional issues," and it concluded that his "arguments and suppositions [were] mere sophistry which [did] nothing to dissuade [the board] from its conclusion."

Next, the board recommended a suspension from the practice of law for a period of one year, but did not set forth any reasoning for this recommendation. The board also failed to address the recommendation of Assistant Disciplinary Counsel that respondent be disbarred. It is this aspect of the board's decision with which I take issue. I join the majority in commending the board, and particularly the members of the panel, for their herculean efforts in this matter and for the fine work of the Court's Assistant Disciplinary Counsel and Deputy Disciplinary Counsel. However, it is this Court's responsibility to impose discipline that responds to the circumstances of the case. See In re Schiff, 677 A.2d 422, 424-25 (R.I. 1996) (refusing to adopt a

recommendation of public censure for an attorney who filed a false fee affidavit and instead imposing an eighteen-month suspension).

In his memorandum to this Court—a copy of which is attached to this opinion as an Addendum—Assistant Disciplinary Counsel acknowledged the board's recommendation of a one-year suspension; but, nonetheless, in light of respondent's serial violations of misconduct, he argued "that the severity of [r]espondent's actions as well as the lack of mitigation factors[,] coupled with his utter disregard for not only this process, but this Court's authority and the protection of not only the integrity of the profession[,] but the public as well[,] warrants a significant sanction beyond the one (1) year suspension recommended by the [b]oard." (Emphasis added.) I concur.

It is my belief that, when imposing attorney discipline, this Court should look to the totality of the circumstances, including the proceedings before the board. Indeed, the level of cooperation before the board and respondent's cooperation with Disciplinary Counsel are factors that generally are brought to this Court's attention in disciplinary matters.

This was not an easy road for Assistant Disciplinary Counsel. The respondent challenged his authority at every level as an ultra vires appointment by this Court. His integrity was assailed, he was referred to on numerous occasions by respondent as a "hit man for the * * * Supreme Court," who was hired to "search and destroy" him; and, significantly, he alleged that, as a practicing lawyer, Assistant Disciplinary Counsel could expect favorable advantage because of his service to this Court. Assistant Disciplinary Counsel was sued four times—three times in federal court and once in Superior Court. The level of vilification directed by respondent toward anyone connected with the investigation and prosecution of this case, including the chair of the

panel and the Court's Deputy Disciplinary Counsel and Assistant Disciplinary Counsel, is shocking and should not be overlooked by this Court.

I share Assistant Disciplinary Counsel's concern that, in addition to the unassailable findings of misconduct "demonstrat[ing] a lack of candor amounting to dishonesty in dealing with various tribunals" and respondent's "refusal or inability to recognize his obligations under the Rules of Professional Conduct[,]" respondent also violated a direct order from this Court prohibiting him from practicing law in the corporate form and thereafter engaged in a course of conduct, throughout these proceedings, in which he consistently and blatantly sought to "circumvent this Court's authority over his law practice[.]"

By way of apparent mitigation of respondent's misconduct, the majority notes that respondent has been a member of the bar for many years and has performed pro bono services during that time. This mitigation does not tip the scales for me.

To this day, respondent has failed to produce the documents sought by Assistant Disciplinary Counsel in defiance of a lawfully issued subpoena, on the ground that Assistant Disciplinary Counsel had no authority to issue it. He moved to quash the subpoena, not before this Court, but before the board, the day before the return date. He appeared at the deposition and flatly refused to produce the records. His statement to the board about why he refused to produce the sought-after records is emblematic:

> "I did bring the records, I did not give them to him because, as I have said before, he's an employee hired by the Supreme Court who has no authority to do this. And I then filed a lawsuit against him in Federal Court. So I met the request even though I thought he had no statutory or constitutional authority [to] do anything of the kind. He's not an Assistant Disciplinary Counsel. He's a hired gun by the Rhode Island Supreme Court by cont[r]act. He gets paid an hourly fee and he has no authority [to] do depositions or to request subpoenas." (Emphasis added.)

In my opinion, the fact that Assistant Disciplinary Counsel resorted to issuing subpoenas for respondent's bank records is of no moment to this discussion. The respondent should have been suspended from the practice of law for noncompliance with Article V, Rule 1.19 of the Supreme Court Rules of Professional Conduct like every other attorney who fails to comply with Rule 1.19. In no event should respondent be readmitted to the practice of law until he produces all records that were subject to subpoena.

As noted, during the course of these proceedings, respondent filed numerous lawsuits against the Chief Justice, the board, Assistant Disciplinary Counsel, and various court employees challenging the authority of the board and Assistant Disciplinary Counsel. Finally, after hearings that spanned over one year, the board issued its findings and submitted its recommendation to this Court. We issued an order directing respondent to appear before this Court in order to respond to the findings of the board. In response, respondent moved to recuse the members of this Court based on bias, unethical conduct, and a violation of his right to due process. Next, he filed yet another federal lawsuit—his third—seeking to restrain this Court from proceeding. That complaint was entitled "COMPLAINT TO STAY SUSPENSION OF PLAINTIFF FROM PRACTING [sic] LAW FOR HIS ACTS IN FILING FEDERAL BANKING [sic] PROCEEDING, ANSWERING FEDERAL ADVERSARY PROCEEDURES [sic], CHALLENGING UNCONSTITUTIONAL ACTS IN FEDERAL COURT." The respondent's rambling discourse in this pleading, as well as his conduct in his appearances before the panel of the board, convince me that he has no insight into his obligations as a member of the bar or the gravity of his dishonesty and attorney misconduct.

In this eleventh-hour salvo, respondent alleged that the Supreme Court was not an adequate or fair forum to hear this matter; that the Court has no authority to suspend respondent

in the absence of a complaint from a client or a judge or the Bankruptcy Trustee; that the Rules of Professional Conduct are "unconstitutional"; and that Assistant Disciplinary Counsel, at the direction of his client, this Court, has undertaken "an otherwise unfounded and unconstitutional pre-textual administrative inquisition of the [p]laintiff's practice of law to seek possible technical violations of the Rule[s] * * * of Professional Conduct[.]" He alleged that this Court has no authority over lawyers "outside of the walls of the R.I. Supreme Court, and in particular within the U.S. Bankruptcy Court"; and that the appointment of Assistant Disciplinary Counsel was in retaliation for respondent's exercise of his rights under the First Amendment.

I pause to note that respondent, clearly and unequivocally, has every right to express his opinions about the members of this Court, the constitution, and his version of the separation of powers in this state and the United States; he even is free to amalgamate those doctrines as he often does. See, e.g., In re Application of Roots, 762 A.2d 1161, 1170 (R.I. 2000). Nonetheless, he must comply with the Rules of Professional Conduct.

The respondent was found by the board to have filed numerous motions out of time, which were declared to be specious and designed to delay the tribunal. He continued to file the same motions and make the same arguments ad nauseam. The respondent contended that the numerous allegations in the petition filed by Disciplinary Counsel amounted to "pettifoggery" and "frivolous little things" taken out of context. He also accused, without apparent foundation or good-faith basis, Barbara Margolis, the Court's Deputy Disciplinary Counsel, of participating in the discussions and deliberations of the board. Ms. Margolis did not attend any deliberations or discussions of the board, and respondent was admonished by the Chair.

On numerous occasions respondent moved the Chair to recuse herself, based on his contention that her evidentiary rulings demonstrated bias. At the conclusion of the hearings

before the board, respondent refused to rest his case. He had no further witnesses to call. When asked if he had any other exhibits to introduce, he stated that he did, but that the Chair would "have to wait until I get them." When informed that the exhibits were required to be produced later that day, respondent refused to produce any further evidence and refused to rest his case. The Chair declared the evidence closed. The respondent's actions before the board, in my opinion, amounted to unprofessional conduct in violation of Article III, Rule 6(e) of the Supreme Court Rules of Disciplinary Procedure.[1]

The respondent's conduct, his multitude of lawsuits challenging the authority of this Court, his deceitful behavior and lack of candor—as set forth in the petition and findings of the board—his refusal to cooperate with Disciplinary Counsel, and his disobedience to a lawfully issued subpoena duces tecum, merit a significantly longer period of suspension and an order that respondent must reapply for admission to the bar, must produce the records demanded by the subpoena, and must demonstrate his fitness to practice law, including his obligation to comply with the Rules of Professional Conduct. Unless he is able to do that, respondent should be deemed unfit to practice law.

The respondent's personal opinions about the current or former members of this Court have no bearing on my opinion in this case, nor do his quixotic ramblings concerning his view of our constitutional structure. The judicial power rests with this Court. The respondent's view of the state's separation of powers as including overlapping responsibilities and authority among

---

[1] Article III, Rule 6(e) of the Supreme Court Rules of Disciplinary Procedure provides:

> "Duty to Cooperate. The failure of an attorney whose conduct is the subject of an investigation authorized by these rules to comply with the reasonable orders and requests of either Counsel or the Board shall constitute unprofessional conduct, and any such failure shall be referred forthwith to this Court for such action as it deems appropriate."

the branches is irrelevant in the context of attorney regulation and discipline. Moreover, respondent's flexible and fluid arguments about this state's constitutional structure do not serve as a shield against his perfidious conduct or block scrutiny by this Court.

In addition to respondent's behavior during the course of this investigation, my concern about the inadequate penalty also extends to the breadth and nature of his misconduct that led to the petition. It is important to note that the petition filed by Disciplinary Counsel did not concern merely one event or proceeding. The violations of the Rules of Professional Conduct did not involve a client or any zealous advocacy by respondent to protect the rights of a client. This disciplinary petition solely dealt with respondent's operation of his law practice and his behavior before the state and federal tribunals concerning his own affairs.

In count 1, the board noted that respondent admitted that he was not insolvent, but he filed two bankruptcy petitions solely to obtain a stay of an order in the Workers' Compensation Court that compelled him to pay money to a former employee. This action was taken in order to impede the Workers' Compensation proceeding. The respondent then filed an application with this Court for permission to practice law as a limited liability company (LLC). This Court issued an order prohibiting respondent from practicing law in any corporate form until he certified that he was no longer practicing law as Keven A. McKenna, PC. He defied this order, changed the name of the corporation to McKenna Support Services, LLC, and continued to practice law under that corporate form. Significantly, practicing law as McKenna Support Services, LLC constitutes the practice of law as an LLC, the very conduct this Court proscribed. The respondent failed to change his bank account, continued to deposit client checks and draw funds for operating expenses from that account, and did so until he was advised that a subpoena had issued for his banking records. He then filed a federal lawsuit seeking to quash that subpoena.

The board found that respondent held himself out as an LLC in violation of an express order from this Court. The board also found respondent's attempts to justify his conduct and "minimize the gravity of his diversion from the applicable disciplinary rules, as <u>palpably disingenuous</u>." (Emphasis added.) Standing alone, this finding warrants further suspension. This Court frequently is asked by Disciplinary Counsel to consider an attorney's lack of candor to Disciplinary Counsel and the board during a disciplinary proceeding.

Count 2 of the petition focused on respondent's unprofessional conduct before the Bankruptcy Court—in failing to disclose income, misrepresenting his interest in a receivable, and engaging in conduct that amounted to a lack of candor and dishonesty—and in his failure to cooperate with the U.S. Trustee's investigation. The respondent failed to report the receivable in his sworn statement to the Bankruptcy Court and to his own attorney. He unilaterally, and without notice to the Bankruptcy Trustee, filed a motion for a whopping attorney's fee and filed an affidavit, in the Town of Bristol Probate Court, designed to place a lien against the probate estate of a former client. He got caught. The U.S. Trustee filed an adversary complaint against him and objected to any discharge. In response to this complaint, respondent proceeded to commit even more violations of the Rules of Professional Conduct, including lack of candor and actions intended to disrupt the proceeding. In his answer to the adversary complaint, respondent refused to admit or deny basic information, including his refusal to admit that copies of his own pleadings were true and accurate copies. He also failed to comply with a subpoena to produce records.

In addressing count 2, the board made a plethora of adverse findings against respondent, including that he "made serial misstatements and misrepresentations regarding his financial affairs, or omitted material facts which he was under an obligation to disclose under sworn

statement in the Bankruptcy Court and in testimony at hearing on the instant [p]etition." The board set forth <u>seven</u> separate material misrepresentations with respect to this receivable. Additionally, the board found that respondent "engaged in a course of conduct deliberately designed to hide the existence, value and collectability of the Wells Receivable. This course of conduct included the making of false statements of material fact, the failure to disclose material facts and the offering of evidence that the [r]espondent knew to be false." The board concluded that this conduct simply cannot be countenanced. The board also declared:

> "It is unfathomable that the serial misrepresentations and omissions of material fact, as unearthed and presented in this case, and which we find established by clear and convincing evidence, would occur without a mindset purposely predisposed to preventing the disclosure of assets which [respondent] deliberately attempted to hide from creditors, including the Bankruptcy Trustee."

The board also found that respondent's conduct was intended to and did disrupt the tribunal. The board also rejected, as ringing hollow, respondent's tired refrain that neither the board nor this Court has jurisdiction over lawyers in federal court proceedings. <u>See</u> <u>In re Schiff</u>, 677 A.2d at 424 (attorney disciplined for filing false document in United States District Court for the District of Rhode Island).

Count 3 relates to respondent's unprofessional conduct with respect to a deposition conducted by Assistant Disciplinary Counsel and respondent's subsequent refusal to maintain records as mandated by Rule 1.19. The respondent was served with a lawfully issued subpoena directing him to appear and bring certain records and to testify with respect to the veracity and completeness of the records produced. He refused to do so. The night before the scheduled deposition, he moved to quash the subpoena on the ground that Assistant Disciplinary Counsel did not have the authority to conduct the disciplinary investigation. The board could discern no

credible authority to support this assertion and found that respondent refused to comply with the subpoena in violation of Rule 1.19 and, further, that he engaged in obstreperous tactics and conduct before the board. This conduct is unacceptable. Attorneys are required to cooperate in any investigation by Disciplinary Counsel or face serious consequences. This Court has not hesitated to respond appropriately when called upon to do so. See In re D'Ambrosio, 29 A.3d 1241, 1241-42 (R.I. 2011) (mem.) (suspending respondent from the practice of law for failure to comply with a duly authorized subpoena directing him to provide financial records to Disciplinary Counsel in connection with a disciplinary complaint); In re Williams, 791 A.2d 486, 486 (R.I. 2002) (mem.) (disbarring an attorney—after an initial suspension—for disregard of the Court's order to comply with subpoenas issued in connection with a disciplinary investigation).

Count 4 brings us to yet another forum, the Workers' Compensation Court, where respondent disrupted the proceedings, failed to exhibit candor, accused the Chief Judge of bias against him, and threatened the Chief Judge, declaring that he was "suing you personally because you're trying to make, take money out of my pocket. I'm going to take money out of your pockets." The board found that respondent was flippant, evasive, dilatory, and disruptive when he refused to disclose his home address to the Workers' Compensation Court, noting that documents he filed in the Bankruptcy Court, the Office of the Secretary of State, and in everyday correspondence included the number and name of the street address he refused to disclose to the court. Additionally, the board found that respondent refused to admit the existence of pretrial orders that were part of the court record and refused to answer straightforward questions and feigned a lack of recollection of his claim for a trial and feigned a lack of understanding of simple questions. The board found that respondent was "deliberately and unnecessarily disruptive and dilatory, disrespectful to the [c]ourt[,] including the judge and opposing counsel,

combative, evasive, unresponsive, disputatious and pugnacious in both his testimony and in his actions as counsel for himself before the Workers' Compensation Court * * *."

Accordingly, based on the numerous, indeed successive and escalating, incidents of dishonesty and unprofessional conduct committed by respondent, all of which related to his conduct as an attorney and officer of this Court, I am of the belief that a suspension of one year does not respond to the seriousness of the violations, their number, or their scope. Although this Court appropriately accords deference to the recommendations of the board, we also pay close attention to the arguments of the Disciplinary Counsel, who have an opportunity to appear before the Court when discipline is recommended. In this instance, although acknowledging the recommendation of Assistant Disciplinary Counsel, the board failed to set forth any discussion of its reasons for rejecting the recommendation and instead recommended a suspension of one year.

In appropriate cases, this Court has elected not to adopt the recommendation of the board. See In re Schiff, 677 A.2d at 424-25 (declining to follow the board's recommendation of a public censure and imposing an eighteen-month suspension for filing a false fee affidavit in federal court); Lisi v. Resmini, 603 A.2d 321, 324 (R.I. 1992) (rejecting the board's recommendation of a sixty-day suspension and ordering a suspension of one year for filing a false jurat). In Carter v. Muka, 502 A.2d 327 (R.I. 1985), this Court initially suspended and, after a lengthy evidentiary proceeding before the full Court—which was necessary because a respondent filed suit against the entire disciplinary board—subsequently disbarred Betty Muka for, among other things, filing unfounded lawsuits with the intent to harass or injure another; knowingly advancing a claim that was unwarranted under existing law; engaging in conduct which was degrading to a tribunal; and knowingly making false accusations against a judge, including vituperative and unsupported accusations against a justice of the Superior Court and other members of the bar. Id. at 328-30.

Although <u>Muka</u> certainly represents an extreme case, this Court's concerns for the rights of individuals who were hauled into court based on Attorney Muka's baseless claims and the rights of litigants in our courtrooms, including her "utter disregard for the requirements of law and the rights of any person who has the temerity to disagree with her[,]" <u>id.</u> at 330, are relevant to this analysis.

In conclusion, it is my opinion that the sanction recommended by the board, and adopted by the majority, is wholly inadequate and, when compared to discipline imposed upon other members of the bar for a single violation of the disciplinary rules, is disparate.

Although I do not, as the majority suggests, consider "a one-year hiatus" from the practice of law to be "insignificant," I continue to believe that the sanction in this case, for what is serial misconduct involving deceit and dishonesty, is a nominal sanction that does not respond to this Court's goal of maintaining the integrity of this honorable profession.

Furthermore, it is my belief that the respondent should not be readmitted to the practice of law unless and until he produces the records that were the subject of a lawfully issued subpoena. This Court has never overlooked an attorney's refusal to produce records sought by Disciplinary Counsel. We should not do so here.

Accordingly, it is my opinion that the respondent should be suspended from the practice of law for two years and should not be readmitted until he complies with Rule 1.19.

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
### SUPREME COURT

IN RE: KEVEN A. MCKENNA                    DSC No. 2012-04    (4-148

### Assistant Disciplinary Counsel's Memorandum in Response to Court's Show Cause Order

This Court has issued a Show Cause Order directing Respondent to appear and show cause as to why the Recommendation of the Disciplinary Board should not be accepted. The Disciplinary Board has specifically recommended that this Court find that Respondent has violated Rules 1.19, 3.3, 3.5(d), 7.1, 7.5 and 8.4 of the Rules of Professional Conduct for his various actions. The Board recommended that this Court sanction Respondent by suspending him from the practice of law for one (1) year. Assistant Disciplinary Counsel hereby submits this Memorandum addressing proposed sanctions in order to advise the Court of the undersigned's position on the recommended sanction prior to the scheduled Show Cause Conference.

Before the Board, Assistant Disciplinary Counsel advocated for the Board to recommend to this Court that Respondent be disbarred upon a finding that Respondent committed all of the alleged violations. It is still Assistant Disciplinary Counsel's belief that the severity of Respondent's actions as well as the lack of mitigating factors coupled with his utter disregard for not only this process, but this Court's authority and the protection of not only the integrity of the profession but the public as well warrants a significant sanction beyond the one (1) year suspension recommended by the Board. The collective actions of Atty. McKenna amounted to serious violations of the Rules of Professional Conduct. In addition to the outright violation of a direct Supreme Court Order and admitted attempts to circumvent this Court's authority over his law practice, the facts demonstrate a lack of candor amounting to dishonesty in dealing with

various tribunals (i.e. Workers' Compensation Court, Bankruptcy Court and Bankruptcy Trustee). Collectively these actions demonstrate a refusal or inability to recognize his obligations under the Rules of Professional Conduct.

In addition to the collective seriousness of these proven actions, there are aggravating factors warranting a harsher penalty. Notably, in this case, the actions that gave rise to the current charges all carry a common theme - Respondent's disregard for the authority of the various courts and judiciary. In fact, Respondent's reaction to this Court's investigation, by and through the undersigned, must also be taken into consideration in the issuance of the appropriate sanction. In the face of an investigation, Atty. McKenna first filed an action in Federal Court asserting various claims attacking the individuals who questioned his actions. *See i.e. McKenna v. DeSisto, C.A. No. 11-602 (U.S. Dist. Ct., RI)*. In this Federal Court Complaint, Respondent not only challenged the authority of the Disciplinary Board and the undersigned but also attacked this Court's authority. Respondent maintained that the disciplinary investigation was unconstitutional in violation of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as well as the Rhode Island Constitution, Art. I, §§ 2 (due process), 6 (search and seizure) and 21 (free speech and right to petition) and the statutory privacy rights established under R.I.G.L. § 9-1-28.1 et seq. Respondent *inter alia* asked the Federal Court to declare that "Chief Justice Suttell" lacked the constitutional authority to appoint the undersigned and asked the Federal Court to stay the disciplinary investigation. Finally, Atty. McKenna asked the Federal Court to declare R.I. Supreme Court Disciplinary Rules (Art. III, Rule 11 and Art. V, Rules 1.15 and 1.19) unconstitutional in violation of the Separation of Powers doctrine. The Federal District Court however, dismissed the action based on the abstention doctrine. On appeal, the First Circuit affirmed the District Court's decision and held that the delegation of

authority to the R.I. Supreme Court and its Disciplinary Board to oversee attorney conduct is "not flagrantly unconstitutional on its face." *McKenna v. DeSisto, C.A. 12-2217, Judgment (June 10, 2013).*

Thereafter, Respondent filed yet another Federal Court action seeking declaratory relief and an injunction preventing the named defendants—a member of the Board and two disciplinary counsel appointed to investigate and present the complaint against him to the Board—from holding their positions and from enforcing the Code of Professional Conduct against him. *McKenna v. Gershkoff, 2013 U.S. Dist. LEXIS 93468, 1-2 (D.R.I. July 3, 2013).* The Federal District Court again dismissed the action based on the abstention doctrine. *Id.*

While fighting the actions in the Federal Court, Respondent opened another front and filed an action in the State Court against Assistant Disciplinary Counsel and the entire Disciplinary Board on the eve of the hearing before the Disciplinary Panel. See *McKenna v. DeSisto, et al,. C. A. 2013-1254 (March 17, 2013).* In this State Court action, Respondent again sought to stop the disciplinary action by claiming that the Supreme Court lacked authority to appoint the Disciplinary Board or the undersigned. Respondent also alleged in this State Court action that the Board, including particularly, Chairperson, Laura Pistauro was biased and should recuse themselves. The Superior Court, however, again refused Respondent's attempt to circumvent the lawful authority of the Supreme Court.

Respondent's conspiracy theory has been played out in the Federal Courts, in the State Courts and before the Disciplinary Board. Respondent's continual reliance on a theory of conspiracy against him coupled with his unwillingness to accept the authority this Court merits a higher form of discipline than recommended by the Board. For that reason, Assistant Disciplinary Counsel submits that the Board's Recommendation of one (1) year

suspension is insufficient to address Respondent's cumulative actions. Although Assistant Disciplinary Counsel believes his initial recommendation is warranted, in light of the Board's current recommendation, Assistant Disciplinary Counsel will be recommending during conference that this Court impose a sanction of four (4) years suspension.

Respectfully submitted,
Assistant Disciplinary Counsel,

Marc DeSisto, Esq. (#2575)
DESISTO LAW
211 Angell Street
Providence, RI 02906
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

## CERTIFICATION OF SERVICE

On this 3rd day of June, 2014, I have this date forwarded the within Objection by email and regular mail, postage pre-paid to:

Keven A. McKenna, Esq.
23 Acorn Street
Providence, RI 02903

Nicholas S. Gelfuso Esq.
131 Clay St
Central Falls, RI 02863

Barbara Margolis, Esq.
David Curtin, Esq.
Chief Disciplinary Counsel
Disciplinary Board
24 Weybosset Street – 2nd Floor
Providence, RI 02903



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      In the Matter of Keven A. McKenna.

**CASE NO:**             No. 2014-148-M.P.
                        (DSC-2012-04)

**COURT:**               Supreme Court

**DATE ORDER FILED:**    February 27, 2015

**JUSTICES:**            Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Per Curiam

**JUDGE FROM LOWER COURT**:

                        N/A

**ATTORNEYS ON APPEAL:**

              For Petitioner:    Marc DeSisto, Esq.
                                 Assistant Disciplinary Counsel

              For Respondent:  Keven A. McKenna, Esq., Pro Se